5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

NOV 22 2000

Michael N. Milby
Clerk of Court

IN RE: PETITION OF MARY OLVERA Individually and as Next Friend of IRIS DENISE OLVERA, DEBBIE MICHELLE OLVERA, and JACLYN OLVERA MINOR CHILDREN, §

VS. §

CITY OF BROWNSVILLE, BROWNSVILLE POLICE DEPARTMENT, CAMERON COUNTY SHERIFF'S DEPT., COUNTY OF CAMERON, PETE DOMINGUEZ, Indiv. and in his official capacity as Policeman, JUAN SALINAS, Indiv. and in his official capacity as Policeman, JUAN JOSE TREVIÑO, Indiv. and in his official capacity as Policeman, JOHN DOES' ONE through FOUR §

CIVIL ACTION NO. B-00-172

(JURY REQUESTED)

**DEFENDANTS' MOTION FOR ORDER RESPECTING EXTRAJUDICIAL COMMUNICATIONS**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW the City of Brownsville, Brownsville Police Department, Pete Dominguez, individually and in his official capacity, Juan Salinas, individually and in his official capacity, and Juan Jose Treviño, individually and in his official capacity, some of the Defendants in the above-styled and numbered action, and file this their Motion for Order Respecting Extrajudicial Communications and in support thereof would show as follows:

ClibPDF - www.fastio.com

I.

On October 27, 2000, Petitioners, Mary Olvera, individually and as Next Friend of Iris Denise Olvera, Debbie Michelle Olvera, and Jaclyn Olvera, Minor Children, instituted a civil cause in the 107th Judicial District Court of Cameron County, Texas, by filing a Petition to Perpetuate Testimony and Evidence, Application for Ex Parte Restraining Order and Request for Temporary Orders and Order Setting Hearing with the District Clerk of Cameron County, Texas. Petitioners seek through their Petition evidence "to determine who was responsible for the wrongful death of David Olvera, deceased and the conduct giving rise to the intentional infliction of emotional distress claims and 1983 civil rights violations/claims of the surviving spouse and three (3) minor children." This cause was subsequently removed to the United States District Court for the Southern District of Texas, Brownsville Division, under 28 U.S.C. § 1441.

II.

A criminal investigation of the three police officers involved in the shooting made the basis of this lawsuit is currently pending before a Cameron County grand jury.

III.

Since filing suit, Petitioner, through her attorney, has made numerous prejudicial comments to the media. Some of these comments are summarized below:

(1) that Petitioner's husband, David Olvera "died in a hail of gunfire from police officers," (Ex. A);

(2) "that the police shot Olvera 18 times as he tried to give himself up," (Ex. A);

(3) that "three responding officers . . . fire 18 shots at Olvera, who was unarmed and was in the act of surrendering when the officers opened fire," (Ex. A);

ClibPDF - www.fastio.com

(4) that David Olvera "has both hands up in the air, palms forward and they fired," (Ex. B);

(5) that the police officers "completely emptied their guns into the man," (Ex. B);

(6) "that the image police of painted on an enrage Olvera is false," (Ex. B);

(7) that Olvera "had the knife in hand, and after repeated pleas [Petitioner] got up as he leaned forward and the knife accidentally went through a pillow and wounded Olvera badly enough that she would need hospitalization," (Ex. B);

(8) that David Olvera did not intentionally stab his wife, (Ex. B);

(9) that "Olvera did not lunge at the officers," (Ex. B);

(10) that "the knife was found in the house," (Ex. B);

(11) that this case "is similar to the Rodney King police brutality case about 10 years ago in Los Angeles," (Ex. B);

(12) that the pathology report showing David Olvera was on drugs at the time of the shooting is false, (Ex. C);

(13) that Petitioner "was not aware of [David Olvera] ever being on drugs and if any chemicals were found in his body they most likely were administered by paramedics at the scene in an attempt to revive him," (Ex. C);

(14) that "[t]reatment for gunshot wounds could result in a false positive for cocaine," (Ex. C);

(15) "that the incident should never have escalated to the point of firing at him, since Olvera was unarmed," (Ex. C);

(16) that David Olvera "did not have a knife in his hands," (Ex. C);

ClibPDF - www.fastio.com

(17) that "[a] knife was later recovered inside the house, . . . but Olvera did not have it in his hand at the time the police shot him," (Ex. C);

(18) that "[a]n ambulance was called, not the police," (Ex. C);

(19) that "[w]hile the officers may have shot him five times, as the autopsy report indicates, that doesn't mean the officers didn't fire more rounds," (Ex. C);

(20) that "a considerable amount more than five shots were fired," (Ex. C);

(21) that the officers "emptied their weapons when firing on Olvera and several neighbors who witnessed the incident can collaborate their allegations," (Ex. C);

(22) that temporary restraining order was filed "to prevent the erasure of police dispatch recordings," (Ex. C);

(23) that the police "terrorized one of Olvera's daughters and threatened to arrest the entire family for trying to be at Olvera's side as he lay dying," (Ex. C); and

(24) that "the 13-year-old gets to her dad's side as he is gasping out 'M'ija, I love you,' [and] . . . that the officers then pulled the girl's hair and threw her to the ground, then handcuffed her and took her in for three hours questioning," (Ex. C).

These are all communications that a lawyer would know or reasonably should know would have a substantial likelihood of materially prejudicing an adjudicatory proceeding. Counsel for Petitioner was asked to refrain from making any further comments to the news media on November 13, 2000. (Ex. D.)

**IV.**

This Court may enter an order restricting extra-judicial communications.

Intense publicity surrounding a judicial proceeding–what Unites States Supreme Court

ClibPDF - www.fastio.com

Justice Felix Frankfurter referred to as "trial by newspaper"–poses significant and well-known dangers to a fair trial. *See Pennekamp v. Florida*, 328 U.S. 331 (1946) (Frankfurter, J., concurring) ("[I]t is indispensable . . . that in a particular controversy pending before a court and awaiting judgment, human beings, however strong, should not be torn from their moorings of impartiality by the undertow of extraneous influence."); *see also Bridges v. California*, 314 U.S. 252 (1941) ("Legal trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper."); *Patterson v. Colorado*, 205 U.S. 454 (1907) (Holmes, J.) ("The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print."). Paramount among these dangers is the potential that pretrial publicity may taint the jury venire, resulting in a jury that is biased toward one party or another. "Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors, and an outcome affected by extrajudicial statements would violate that fundamental right." *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991). Trial courts therefore have "an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity." *Gannett Co. v. DePasquale*, 443 U.S. 368 (1979); *see also Chandler v. Florida*, 449 U.S. 560 (1981) ("Trial courts must be especially vigilant to guard against any impairment of the defendant's right to a verdict based solely upon the evidence and the relevant law."); *United States v. Noriega*, 917 F.2d 1543, 1549 (11th Cir.) (per curiam ), *cert. denied sub nom. Cable News Network v. Noriega*, 498 U.S. 976 (1990). "[T]he speech of lawyers representing clients in pending cases may be regulated under a less demanding standard than that established for regulation of the press in Nebraska Press." *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991)

ClibPDF - www.fastio.com

(opinion of Rehnquist, C.J.) (citations omitted) (upholding state bar rule prohibiting lawyer communications with the media). Demonstration of a "substantial likelihood of material prejudice" from an attorney's extrajudicial comments, as opposed to a "clear and present danger," is constitutionally sufficient to justify prescribing attorney communications to the media. *See id.*; *cf. In re Express-News Corp.*, 695 F.2d 807, 810 (5th Cir.1982) (applying strict scrutiny to court order denying press right to interview jurors).

**V.**

Petitioner's communications to the media create a substantial likelihood of material prejudice to Defendants. The allegations Petitioner makes through her attorney are untested and may rest on evidence that would be inadmissible at trial or on no evidence at all. Accordingly, Defendants move the Court to enter an order, prohibiting the attorneys and parties from discussing with any public communications media anything about the case which could interfere with a fair trial, including statements intended to influence public opinion regarding the merits of this case, with the following exceptions only:

(1) the general nature of any allegations or defenses in the public records without elaboration or any kind of characterization;

(2) scheduling information; and

(3) any decision or order by the Court that is a matter of public record without elaboration or any kind of characterization.

Such relief would protect Defendants right to a fair and impartial jury while safeguarding Petitioner's interests under the First Amendment.

WHEREFORE, PREMISES CONSIDERED, the City of Brownsville, Brownsville Police

ClibPDF - www.fastio.com

Department, Pete Dominguez, individually and in his official capacity, Juan Salinas, individually and in his official capacity, and Juan Jose Treviño, individually and in his official capacity, some of the Defendants in the above-styled and numbered action, respectfully request that this Court grant this their Motion for Order Respecting Extra-Judicial Communications and grant Defendants all other relief to which they may show themselves justly entitled.

Signed on November 20, 2000.

Respectfully submitted,

WILLETTE & GUERRA, L.L.P.
International Plaza, Ste. 460
3505 Boca Chica Blvd.
Brownsville, Texas 78521
Telephone: (956) 541-1846
Facsimile: (956) 541-1893

By: [signature]
George C. Kraehe
State Bar No. 00792631
USDC Adm. No. 19355

Charles Willette, Jr.
State Bar No. 21509700
USDC Adm. No. 1937

Attorneys for Defendants City of Brownsville, Brownsville Police Department, Pete Dominguez, Juan Salinas, and Juan Jose Treviño, individually and in their official capacities

ClibPDF - www.fastio.com

SVILLE
Grande Valley

COMMUNITY A4
SOUTHMOST A5
TEXAS A8
NATION A10
EDITORIAL A12

# Autopsy: Man shot 5 times

## Court: Widow claims husband received 18 gunshot wounds.

**BY BRAD PIERCE**
THE BROWNSVILLE HERALD

Despite allegations that David Olvera, 37, died in a hail of gunfire from police officers last month, preliminary autopsy results indicate he had only five gunshot wounds at the time of his death.

His widow's lawyer, Angela Nix, began proceedings last week for a multimillion-dollar lawsuit and maintains that the police shot Olvera 18 times as he tried to give himself up.

However, the autopsy findings show that Olvera was shot twice in his chest, once in his stomach, once in his groin area and once in his left arm, which was a superficial wound.

"He was shot a total of five times," pathologist Lawrence J. Dahm concluded, and died from massive injuries to his liver and spleen, which caused abdominal bleeding.

Justice of the Peace Tony Torres, who viewed Olvera's body before the autopsy, also said there's no way he was shot 18 times.

Nix did not return phone calls on Monday to respond to the autopsy results.

Police killed Olvera, who reportedly was an ex-con with a history of domestic violençe, on Oct. 1 after he stabbed his wife, Mary, at their home at 228 Paredes Line. He was shot according

he lunged at the officers with a knife, Brownsville police Lt. Orlando Rodriguez said.

Mary, 38, had suffered constant harassing and assaults by her husband ever since he get out of prison nine months before, Rodriguez said. However, she has expressed plans to file a $10 million wrongful death lawsuit against the City of Brownsville and the police department, alleging emotional distress and possible civil rights violations.

Nix said the three responding officers, Pete Dominguez, Juan Salinas and Juan Jose Trevino fired 18 shots at Olvera, who was unarmed and was in the act of surrendering

One of the couple's three daughters, ages 9, 13 and 16, called 911 to receive medical attention for her mother, whom police say was stabbed by her husband with a kitchen knife.

Nix maintains that the stabbing was accidental and the family never intended for the police to show up. However, after they did, the youngest daughter begged her father to flee.

"Daddy, Daddy run, they are going to arrest you," the girl said, according to Nix.

An agitated, knife-wielding Olvera was found in the backyard of the home vowing he would not go back to prison, Rodriguez said, stressing that the man was killed after

00210

# Lawsuit against police planned

## Crime: Widow seeks damages for death of her husband.

BY DANIEL BORUNDA
THE BROWNSVILLE HERALD

The widow stabbed by her husband, after which he was fatally shot by Brownsville police, has begun proceedings for a multi-million dollar lawsuit against the city and police department, her attorney said.

David Olvera was allegedly unarmed when he was shot 18 times by three police officers on Oct.1 after the alleged accidental stabbing of Mary Olvera, attorney Angela P. Nix said.

"He had both hands up in the air, palms forward and they fired," Nix said. "They completely emptied their guns into the man."

Police had said that a knife-wielding David Olvera had lunged at them and officers responded within training procedures.

Nix filed a temporary restraining order to prevent the erasure of police dispatch recordings and a petition for testimony and evidence, including the three guns used in the shooting.

Olvera's survivors — his 38-year-old wife and three daughters — will file a $10 million lawsuit for wrongful death and the intentional infliction of emotional distress, Nix said. Mary Olvera was not available for comment.

"We welcome any inquiry regarding conduct of officers," said police spokesman Lt. Orlando Rodriguez, who refused to discuss the case further because of the pending litigation. "The matter will be dealt with at the proper time," he said.

City Attorney Geoff Warburton refused to comment since it was the start of litigation.

Nix said that the image police have painted of an enraged Olvera is false. She said the incident was an accident that ended tragically in a hail of police gunfire.

It was a little past 9 a.m. on Oct. 1 when Olvera was using a kitchen knife to make a sandwich at the family home at 228 Paredes Line Road, Nix said. It was nine months since the 37-year-old parolee had served prison time on a drunk driving charge.

The night before, Olvera and his wife of 17 years had argued. Olvera went to the bedroom to continue the argument.

He had the knife in hand, and after repeated pleas she got up as he leaned forward and the knife accidentally went through a pillow and wounded Mary Olvera badly enough that she would need hospitalization, the attorney said.

"It was not an intentional stabbing," Nix said. "She did not know it happened when it happened."

Police had said Olvera had been harassing and threatening his wife.

Police arrived to find Mary Olvera bleeding in the front yard. The family was waiting for the ambulance, Nix said.

Officers Pete Dominguez, Juan Salinas and Juan Jose Treviño drew their weapons. They found a shirtless Olvera in the backyard and gunfire broke out, Nix said.

The attorney contends that Olvera did not lunge at the officers. In fact, Nix said, the knife was in the house.

The case may go before a federal judge since it involves civil rights violations claims, said Nix, who explained the case is similar to the Rodney King police brutally case about 10 years ago in Los Angeles.

Blumberg No. 5119
EXHIBIT
B

ClibPDF - www.fastio.com

# Family disputes autopsy report in police shooting

## Findings: Drug use and fired bullets in question.

**BY BRAD PIERCE**
THE BROWNSVILLE HERALD

In addition to refuting allegations that David Olvera was gunned down by the police with 18 shots, a preliminary autopsy report shows that the ex-con had drugs in his system when he confronted three officers last month.

The pathologist's report, concluded following an examination of his body the day after he was killed, shows that Olvera had cocaine and marijuana in his system at the time of his death.

The police reported that Olvera was agitated after he stabbed his wife in early October and was confronted by officers Pete Dominguez, Juan Salinas and Juan Jose Trevino. The 37-year-old ex-con was unemployed at the time of the incident and had been harassing his wife ever since he was released from prison on a drunken driving charge nine months before, the police say.

However, Angela Nix, attorney for Olvera's widow, rejects the possibility that Olvera was on drugs when he was killed. She said his wife, who's name is Mary, was not aware of him ever being on drugs and if any chemicals were found in his body they most likely were administered by paramedics at the scene in an attempt to revive him.

Treatment for gunshot wounds could result in a false positive for cocaine, she explained, adding that the incident should never have escalated to the point of firing at him, since Olvera was unarmed.

"He did not have a knife in his hands," Nix suggested, despite police assertions that Olvera lunged at the officers with a knife. A knife was later recovered inside the house, Nix added, but Olvera did not have it is his hand at the time the police shot him.

Nix also maintains police should have never responded to the 911 call, made by one of Olvera's daughters, because no crime had been committed since Olvera's wife was injured by accident.

"An ambulance was called, not the police," she said. "They thought it was a domestic violence situation instead of a domestic accident." While the officers may have shot him five times, as the autopsy report indicates, that doesn't mean the officers didn't fire more rounds, Nix said, sticking by her previous statement that the police fired 18 shots.

Nix, however, said based on statements made by Olvera's wife and three children, who were standing behind the officers at the time of the incident, she believes "a considerable amount more" than five shots were fired.

The Brownsville lawyer explained that the family believes the officers "emptied" their weapons when firing on Olvera and several neighbors who witnessed the incident can collaborate their allegations, she said.

Nix filed a temporary restraining order earlier this month to prevent the erasure of police dispatch recordings and a petition for testimony and evidence, including the three guns used in the shooting.

She is preparing to file a $10 million lawsuit on behalf of Olvera's widow, which includes accusations of emotional distress and possible civil rights violations by the policemen. Nix maintains that the police "terrorized" one of Olvera's daughters and threatened to arrest the entire family for trying to b at Olvera's side as he lay dying.

"(But) the 13-year-old gets to her dad's side as he is gasping out 'M'ija, I love you,'" Nix said, adding that the officers pulled the girl's hair and threw her to the ground, then handcuffed her and took her in for three hours of questioning.

"This was a terrible, terrible error on the part of officers," Nix said. Police maintain that they acted justly, in accordance to law and with compassion for the victims.

"The facts of this case will come out at the proper time,' Lt. Orlando Rodriguez of the Brownsville Police Department said, declining to comment further due to pending litigation.

Blumberg No. 5119
EXHIBIT
C

ClibPDF - www.fastio.com

# WILLETTE & GUERRA, L.L.P.
## ATTORNEYS AT LAW

CHARLES WILLETTE, JR.
R. D. "BOBBY" GUERRA*
MARK SOSSI
HUGH P. TOUCHY
EILEEN M. LEEDS

ALEX AGUIRRE*
EDUARDO G. GARZA
RYAN HENRY
GEORGE C. KRAEHE
CYNTHIA A. MALDONADO
ILENE PERALEZ*
LAWRENCE J. RABB
ALEXIA J. RODRIGUEZ
ELIZABETH SANDOVAL-CANTU*

INTERNATIONAL PLAZA, SUITE 460
3505 BOCA CHICA BOULEVARD
BROWNSVILLE, TEXAS 78521
TELEPHONE: (956) 541-1846
FACSIMILE: (956) 541-1893

*MCALLEN OFFICE:
801 NOLANA, SUITE 320-A
MCALLEN, TEXAS 78504
TELEPHONE: (956) 686-2266

November 13, 2000

***Via Facsimile (956) 548-0522***
Ms. Angela Nix
ATTORNEY AT LAW
955 East Madison Street
Brownsville, Texas 78520

Re: Civil Action No. B-00-172
In Re: Petition for Mary Olvera, et al. vs.
City of Brownsville, et al.
For the Southern District of Texas
Brownsville Division
Our File No. 00-216 CW/GK

Dear Ms. Nix:

This is to confirm that we have met by telephone pursuant to Federal Rule of Civil Procedure 26(f) and have discussed "the nature and basis of [our] claims and defenses and the possibilities for a prompt settlement or resolution of the case, to make or arrange for disclosures . . . , and to develop a proposed discovery plan." Fed. R. Civ. Proc. 26(f). This is also to confirm that you have received our proposed discovery plan and will be making changes to it as indicated during our meeting so that we can file it as soon as possible with the Court.

To summarize our discussions, you have indicated that you do not agree to federal jurisdiction in this matter, arguing that our removal was premature. You are further not amenable to consenting to trial of this matter by a United States Magistrate Judge, at least not at this juncture. We also discussed what evidence each of us has in support of our claims and/or defenses. You indicated that you have identified at least three (3) witnesses–two persons who drove by in their vehicles and a person employed by a funeral home–who you say will testify that far more than five (5) shots were fired at the time of the incident in question. We remind you that Federal Rule of Civil Procedrue 26(a) requires you to voluntarily disclose the names, addresses, and telephone numbers of these persons, as well as the names, addresses, and telephone numbers of any persons having personal knowledge of any facts relevant to this matter.

We hereby request that you immediately disclose the names, addresses, and telephone numbers of these witnesses.

For our part, we will provide you as soon as possible with a complete copy of all non-privileged parts of the custodial death report generated by the Brownsville Police Department in accordance with Texas Code of Criminal Procedure article 49.18, Texas Penal Code section 39.05, and Texas Government Code section 501.055(b). The custodial death report includes, among other things, offense reports, supplemental reports, victim and witness affidavits, police department communications, emergency medical service records, pathology reports, David Olvera's criminal history record, and diagrams and photographs of the scene of the shooting. There are certain documents and things in the possession or under the control of the Brownsville Police Department not made part of this report, including but not limited to the firearms used in the shooting and other physical evidence collected at the scene of the incident. These materials can be examined at some later date agreeable to the parties.

Finally, as discussed, we would like to inspect the premises at 228 Paredes Line Road as soon as possible. It is essential that we be permitted to inspect, photograph, and videotape these premises before any changes are made to them. We would also like to take the oral deposition of Jaclyn Olvera. We are available on the following dates: November 14, 15, 16, 20, 21, 27, 28, 29, and 30, 2000. We hope to hear from you as soon as possible.

As a final matter, we would note that already we have read two newspaper articles in which statements highly prejudicial to our client are attributed to you. In one account, you allegedly told a reporter that David Olvera was shot eighteen (18) times, and that, "[h]e had both hands up in the air, palms forward and they fired." You allegedly went on to say, "They completely emptied their guns into the man." If you have evidence of this, we would like to see it as soon as possible. We would also like to remind you that Rule 3.07 of the Texas Disciplinary Rules of Professional Conduct specifically prohibit a lawyer from making extrajudicial statements to a newspaper if the lawyer knows or reasonably should know that it will have a substantial likelihood of prejudicing an adjudicatory proceeding. If you have been making statements to the press regarding the facts of this case, we would respectfully request that you refrain from doing so in the future. If you cannot refrain from doing so, we will ask the Court to take the appropriate action.

Your cooperation is greatly appreciated.

Very truly yours,

WILLETTE & GUERRA, L.L.P.

By: [signature]

George C. Kraehe

ClibPDF - www.fastio.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2000, a true and correct copy of the above and foregoing has been served on all counsel of record via Certified Mail, Return Receipt Requested as hereinbelow noted:

Ms. Angela Nix
ATTORNEY AT LAW
955 East Madison Street
Brownsville, Texas 78520

George C. Kraehe

## CERTIFICATE OF CONFERENCE

I hereby certify that several attempts were made to obtain opposing counsel's agreement or nonopposition to this Motion. Plaintiff's counsel has not agreed to join in this motion and is not unopposed to it.

George C. Kraehe

ClibPDF - www.fastio.com