Case 1:00-cv-00172   Document 11   Filed in TXSD on 12/08/2000   Page 1 of 46

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

DEC 1 2 2000

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| IN RE: PETITION OF MARY OLVERA | § | |
| Individually and as Next Friend of IRIS | § | |
| DENISE OLVERA, DEBBIE MICHELLE | § | |
| OLVERA, and JACLYN OLVERA | § | |
| MINOR CHILDREN, | § | |
| | § | CIVIL ACTION NO. B-00-172 |
| VS. | § | |
| | § | (JURY REQUESTED) |
| | § | |
| CITY OF BROWNSVILLE, BROWNSVILLE | § | |
| POLICE DEPARTMENT, CAMERON | § | |
| COUNTY SHERIFF'S DEPT., COUNTY | § | |
| OF CAMERON, PETE DOMINGUEZ, | § | |
| Indiv. and in his official capacity as Policeman, | § | |
| JUAN SALINAS, Indiv. and in his | § | |
| official capacity as Policeman, JUAN JOSE | § | |
| TREVIÑO, Indiv. and in his official capacity | § | |
| as Policeman, JOHN DOES' ONE through FOUR | § | |

---

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR REMAND

---

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW the City of Brownsville, Brownsville Police Department, Pete Dominguez,

individually and in his official capacity, Juan Salinas, individually and in his official capacity,

and Juan Jose Treviño, individually and in his official capacity, some of the Defendants in the

above-styled and numbered action, and file this their Response to Plaintiff's Motion for Remand

and in support thereof would show as follows:

1

# I.

## STATEMENT OF THE CASE

On October 27, 2000, Petitioners, Mary Olvera, individually and as Next Friend of Iris

Denise Olvera,  Debbie Michelle Olvera, and Jaclyn Olvera, Minor Children, instituted a civil

cause in the 107th Judicial District Court of Cameron County, Texas, by filing a Petition to

Perpetuate Testimony and Evidence, Application for Ex Parte Restraining Order and Request for

Temporary Orders and Order Setting Hearing ("Petition to Perpetuate Testimony") with the

District Clerk of Cameron County, Texas.  Petitioners seek through their Petition evidence "to

determine who was responsible for the wrongful death of David Olvera, deceased and the

conduct giving rise to the intentional infliction of emotional distress claims and 1983 civil rights

violations/claims of the surviving spouse and three (3) minor children."  This cause was

subsequently removed to the United States District Court for the Southern District of Texas,

Brownsville Division, under 28 U.S.C. § 1441.

# II.

## PETITIONERS' MOTION TO REMAND

Petitioners have filed a Motion to Remand.  Petitioners argue that this Court lacks subject

matter jurisdiction, because Petitioners seek only to investigate potential claims for negligence,

wrongful death, intentional infliction of emotional distress and civil rights violations under 42

U.S.C. § 1983, and that "no action involving a federal issue has of yet been filed."  (Pets.' Mtn.

for Remand at 3.)  Petitioners argue that removal was premature because, "[a]t the time of

removal, Petitioners' pleadings sought nothing more than the preservation of relevant evidence

and the opportunity to conduct three pre-suit depositions."  (Pets.' Mtn. for Remand at 2.)

2

Defendants believe for the reasons set forth below that removal was proper in the instant action and that remand of this action would be improper.

## III.

## ARGUMENTS AND AUTHORITIES

## IN SUPPORT OF DEFENDANTS' RESPONSE

### A.    Petitioners Allege Claims Arising under Federal Law.

This action is removable, because Petitioners allege claims arising under federal law.

"Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b). Whether a claim or right is one "arising under the Constitution, treaties or laws of the United States" for removal purposes is determined by the same "well pleaded complaint rule" that determines federal question jurisdiction. *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470 (1998). Removal jurisdiction based on a federal question is determined from the complaint as it existed at the time of removal. *Libhard v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1065 (9th Cir. 1979).[1] A case is removable where a federal question is presented on the facts of the complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). If a pleading in a state court action asserts rights under federal civil rights laws, removal can be upheld under § 1441(b). *Harris v. Birmingham Board of Education*, 817 F.2d 1525, 1526 (11th Cir. 1987).

---

[1] Where state law permits pleadings prior to filing the complaint, *e.g.*, an application for a restraining order before filing the complaint, the time for removal runs from receipt of such pleadings. *See Kidde Rides USA, Inc. v. Elecktro-Mobiletechnik*, 579 F. Supp. 1476, 1479 (C.D. Ill. 1984) (holding that affidavit of attachment constitutes initial pleading)(attached hereto as Ex. A).

3

CSxPDF - www.fsxtix.com

Petitioners have clearly pleaded an action arising under the laws of the United States. Petitioners state in their Petition to Perpetuate that they have retained the services of an attorney "to investigate Petitioner's claims for . . . 1983 Civil Rights violations, *occurring* on or about October 2, 2000 in Cameron County, Texas." (Pet. to Perpetuate at 2)(emphasis added). Petitioners go on to allege that they seek to determine "who was responsible for the wrongful death of David Olvera, Deceased and the conduct giving rise to the . . . 1983 Civil Rights Violations/Claims." (Pet. to Perpetuate at 5.) Then Petitioners make the following factual allegations:

> Petitioner, Mary Olvera, was restrained from the side of her dying spouse, she was threatened with arrest, she was prevented from accompanying Decedent to the hospital, and she was negligently delayed in getting necessary medical attention;
>
> Petitioner, Iris Debbie Olvera, a minor was terrorized by two officers entering her home with guns drawn and was subsequently restrained from the side of her dying father and threatened with arrest;
>
> Petitioner, Debbie Michelle Olvera, a minor was threatened with arrest and was forcibly removed from the side of her dying father by an officer or officers pulling her by her hair and throwing her to the ground, handcuffing her and transporting her to the Police Department at 600 East Jackson for more than three (3) hours of questioning;
>
> Petitioner, Jaclyn Olvera, a minor was threatened with arrest. [*Sic.*]

(Pet. to Perpetuate at 6.) Petitioners further state that the purpose of their "investigation" is to elicit the following evidence:

1.      Why [the police officers] entered the home with guns drawn despite being

4

informed of the presence inside the home of minor children;

2.      Why they used deadly force;

3.      Why they shot the Decedent 18 times;

4.      Why they threatened Petitioners with arrest;

5.      Why they assaulted Petitioners;

6.      Why they refused or delayed necessary medical attention for injuries suffered by Mary Olvera; [and]

7.      Why they handcuffed and took Petitioner, Debbie Michelle Olvera, a minor in for more than 3 hours of questioning.

(Pet. to Perpetuate at 6-7.)

These detailed allegations are not stated as hypotheses based on facts yet to be discovered. To the contrary, they are stated as matters of fact. Petitioners clearly and unambiguously allege that civil rights violations "occurred" and that there was in fact "conduct giving rise to . . . 1983 Civil Rights Violations/Claims." (Pet. to Perpetuate at 5.) Only the whats, whys, and whos remain for Petitioners' "investigation," not whether there are claims to be alleged under 42 U.S.C. § 1983. Such claims have in fact been alleged and arise under the laws of the United States. Removal of this action was therefore proper under 28 U.S.C. § 1441(b).

**B.     Petitioners Improperly Are Attempting to Manipulate the Forum.**

Defendants believe removal of this matter was proper, because Petitioners have improperly attempted to manipulate the forum to give them an unfair advantage in conducting discovery.

In *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988), the United States Supreme

5

Court held that a district court may retain jurisdiction of a removed action, *even in the absence of a removable claim*, where it is shown that the plaintiff had improperly attempted to manipulate the forum, stating as follows:

> A district court can consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand a case. If the plaintiff has attempted to manipulate the forum, the court should take this behavior into account in determining whether the balance of factors considered under the pendent jurisdiction doctrine support a remand in the case.

*Carnegie-Mellon*, 484 U.S. at 357.

By characterizing their action as a pre-suit investigation, Petitioners improperly have attempted to manipulate the forum to obtain an unfair advantage in conducting discovery. But Petitioners' contention that they are only conducting a pre-suit investigation is disingenuous at best, particularly as Petitioners themselves were allegedly all eye-witnesses to the incident made the basis of this claim; certainly no investigation is necessary for Petitioners to communicate their personal knowledge to their attorneys, and clearly they have already done this. To be sure, Petitioners' "investigation," as demonstrated by the conduct of Petitioners' attorneys discussed below, is nothing more than a sham designed to manipulate the forum.

Although generally it is not proper to consider matters outside the initial pleading in determining whether a federal claim is well pleaded, *Caterpillar, Inc.*, 482 U.S. at 392, it is not necessarily improper to look outside the pleadings to consider whether a plaintiff has engaged in improper manipulation of the forum. *Brown v. Southwestern Bell Telephone Co.*, 901 F.2d 1250, 1255 (5th Cir. 1990)(considering entire course of proceedings in upholding district court's refusal

6

CUIsPDF - www.faxisa.com

to remand). That Petitioners' "investigation" is a sham is underscored by comments Petitioners'

attorneys have made to the media regarding the facts of this case that leave no doubt as to

Petitioners' true intentions:

(1)     that "three responding officers . . . fired 18 shots at Olvera, who was unarmed and

        was in  the act of surrendering when the officers opened fire," (Ex. B);

(2)     that David Olvera "has both hands up in the air, palms forward and they fired,"

        (Ex. C);

(3)     that the police officers "completely emptied their guns into the man," (Ex. C);

(4)     that "Olvera did not lunge at the officers," (Ex. C);

(5)     that this case "is similar to the Rodney King police brutality case about 10 years

        ago in Los Angeles," (Ex. C);

(6)     that the pathology report showing David Olvera was on drugs at the time of the

        shooting is false, (Ex. D);

(7)     "that the incident should never have escalated to the point of firing at him, since

        Olvera was unarmed," (Ex. D);

(8)     that the officers "emptied their weapons when firing on Olvera and several

        neighbors who witnessed the incident can collaborate their allegations," (Ex. D);

        and

(9)     that the Olveras will be bringing federal claims seeking millions of dollars, (Ex.

        D).

Given these allegations, Petitioners' suggestion in their Petition to Perpetuate that they do not

have sufficient information on which to bring claims under 42 U.S.C. § 1983 seems insincere.

7

Also insincere is Petitioners' stated purpose of safeguarding and examining the physical evidence collected in the course of the Brownsville Police Department's investigation of the subject shooting and taking the oral depositions of the police officers involved in the shooting. At least six (6) weeks have passed since Petitioners filed their Petition to Perpetuate. Not once since then, however, have Petitioners taken any step to examine the evidence Defendants have voluntarily made available to them for inspection–not the photographs, not the audio recordings, not the other evidence–nor have Petitioners taken any action to secure the police officers' oral depositions, *even after Defendants have voluntarily offered to produce themselves for deposition.* (Exs. E-M.) While Defendants have voluntarily produced for inspection and/or copying all information and materials collected or generated in connection with their investigation, Petitioners have time and again stubbornly refused to make disclosures as required under Federal Rule of Civil Procedure 26, have refused to allow inspection of the premises where the shooting occurred, have refused to disclose the names of witnesses they tell us they have met and spoken with, and have refused to produce themselves for oral deposition. Thus reveals itself the true purpose of Petitioners' pre-suit investigation: Petitioners seek a forum for their civil rights claims in which they can conduct one-sided discovery with the full power and sanction of the Court while depriving Defendants of the opportunity to do the same. Petitioners' manipulative tactics, if allowed to succeed, will not only result in an improper forum, but will also gravely prejudice Defendants by leaving them without the safeguards incorporated in the Federal Rules of Civil Procedure and designed to guarantee Defendants' constitutional right to confront witnesses and mount their defense of Petitioners' serious allegations.

WHEREFORE, PREMISES CONSIDERED, the City of Brownsville, Brownsville Police

Department, Pete Dominguez, individually and in his official capacity, Juan Salinas, individually and in his official capacity, and Juan Jose Treviño, individually and in his official capacity, some of the Defendants in the above-styled and numbered action, respectfully request that this Court deny Petitioners' Motion for Remand and grant Defendants all other relief to which they may show themselves justly entitled.

Signed on December 12, 2000.

9

Respectfully submitted,

WILLETTE & GUERRA, L.L.P.
International Plaza, Ste. 460
3505 Boca Chica Blvd.
Brownsville, Texas  78521
Telephone:  (956) 541-1846
Facsimile:  (956) 541-1893

By: _____
George C. Kraehe
State Bar No. 00792631
USDC Adm. No. 19355

Charles Willette, Jr.
State Bar No. 21509700
USDC Adm. No. 1937

Attorneys for Defendants City of
Brownsville, Brownsville Police
Department, Pete Dominguez, Juan Salinas,
and Juan Jose Treviño, individually and in
their official capacities

## CERTIFICATE OF SERVICE

I hereby certify that on December __12__, 2000, a true and correct copy of the above and foregoing has been served on all counsel of record via hand delivered as hereinbelow noted:

Ms. Angela Nix
ATTORNEY AT LAW
955 East Madison Street
Brownsville, Texas 78520

_____
George C. Kraehe

10

ing was in fact the complaint filed on November 9.

In their discussion of the "time for seeking removal", Wright, Miller and Cooper state:

> "The fundamental principle of the statute is that the time limitation on seeking removal begins to run when defendant receives notice of the action, not when the action is commenced." Wright, Miller, and Cooper, Federal Practice and Procedure: Civil, § 3732.

Thus:

> "By its own terms, then, the statute does not require an action to be filed before a petition for removal will be entertained.

> * * * * * *

> It is the 'receipt' of the 'initial pleading' pursuant to section 1446 which controls removability." *Perimeter Lighting, Inc. v. Karlton,* 456 F.Supp. 355, 358–359 (N.D.Ga.1978).

In the *Karlton* case, the defendant filed a petition for removal after a temporary restraining order had been entered against him even though no complaint had been filed with the clerk of the state court. At the hearing on the temporary restraining order, the plaintiff had delivered to the defendant and the presiding judge a copy of a complaint but one week later filed a complaint which differed from that which he had delivered at the TRO hearing. While the complaint delivered at the TRO hearing presented complete diversity and, therefore, would have permitted removal, the complaint as actually filed included other parties and complete diversity was not present and removal would have been improper. The Court held that an "initial pleading" as used in the statute:

> "... must constitute a clear statement of the case which will allow the defendant to examine the basis for the action. In particular, the initial pleading must be such that the defendant can intelligently ascertain removability from its face." *Karlton,* 456 F.Supp. at 358 (citations omitted).

The Court, under the facts presented, concluded:

> "In effect, then, the state court had taken action on a case not yet of record. To deny defendant's right to remove in such a situation would allow plaintiff to effect, by holding of a defendant's right to remove until such time as plaintiff sees fit to file the complaint. Such a holding would work to defeat the removal statute's purpose and allow a plaintiff to keep an action, otherwise removable, in the state court even after the state court had exercised its power by enjoining the defendant. Here there has been an initial pleading, received by the defendant at a court proceeding at which the court's power was exercised over defendant. Certainly that is all which section 1446(b) requires to give rise to a right of removal." *Karlton,* 456 F.Supp. at 359.

In *Williams v. Beyer,* 455 F.Supp. 482 (D.C.N.H.1978), a dispute arose between the parties regarding the terms of a contract. The contract provided that any disputes were to be resolved through the use of arbitration and, therefore, the plaintiff filed a petition for appointment of arbitrator in the county court of New Hampshire. The petition set forth the diverse residency of the parties and indicated that the amount in controversy was $15,000. The defendant filed an answer and a cross-petition. The court ordered the parties to proceed to arbitration and the arbitrator eventually entered an award in favor of the plaintiff. Several months later the plaintiff filed an application for confirmation of the award in the county court and the defendant attempted to remove the action and filed a motion to vacate the arbitration award. The court held that the time period with respect to the removability of the action began when the court entered its order directing the parties to proceed to arbitration because "at that point in time, the defendant knew full well that there was a dispute between diverse parties and that the plaintiff was then claiming the sum of $15,000 in damages". *Williams,* 455 F.Supp. at 484.

Accordingly, the time period for seeking removal begins to run when the Defendant receives a pleading from which he can

EXHIBIT A

**KIDDIE RIDES USA, INC., Plaintiff,**

v.

**ELEKTRO–MOBILTECHNIK GMBH, Defendant,**

and

**Grand Trunk Western Railroad Company, Garnishee.**

No. 83–4109.

United States District Court,
C.D. Illinois,
Rock Island Division.

Feb. 10, 1984.

Breach of contract action was brought in Illinois state court. Action was removed to federal court. On motion to remand case to state court, the District Court, Mihm, J., held that: (1) under Illinois law, affidavit of attachment which provided defendant with clear statement that breach of contract action involved diverse parties and that requisite amount in controversy was involved constituted initial pleading for purposes of commencing 30–day period in which petition for removal was required to be filed; thus, removal petition filed within 30 days of filing of complaint but more than 30 days after service of affidavit of attachment was untimely; (2) entering a special appearance and moving to vacate order of attachment, together with untimeliness of removal petition, constituted waiver of right to remove breach of contract action to federal court; and (3) failure of garnishee, who was merely a nominal party in breach of contract action in which it was a defendant, to join in petition for removal did not render petition defective.

Motion granted.

**1. Removal of Cases ⟺79(1)**

Under Illinois law, affidavit of attachment which provided defendant with clear statement that breach of contract action involved diverse parties and that requisite amount in controversy was involved constituted initial pleading for purposes of commencing 30–day period in which petition for removal was required to be filed; thus,

removal petition filed within 30 days of filing of complaint but more than 30 days after service of affidavit of attachment was untimely. Ill.S.H.A. ch. 110, ¶¶ 4–104, 4–130, 4–131; 28 U.S.C.A. § 1446.

**2. Removal of Cases ⟺17**

To constitute waiver of right to removal of action to federal court, there must be a clear and unequivocal waiver on part of defendant. 28 U.S.C.A. § 1446.

**3. Removal of Cases ⟺17**

For there to be a waiver of right to removal to federal court, defendant must seek some affirmative action or relief in state court; mere filing of answer or general defense short of merits does not constitute a waiver. 28 U.S.C.A. § 1446.

**4. Removal of Cases ⟺17**

A defendant may not, after having argued and lost an issue in state court, remove action to federal court for what is in effect an appeal of adverse decision. 28 U.S.C.A. § 1446.

**5. Removal of Cases ⟺17**

Entering a special appearance and moving to vacate order of attachment, together with untimeliness of removal petition, constituted waiver of right to remove breach of contract action to federal court. 28 U.S.C.A. § 1446.

**6. Removal of Cases ⟺82**

All defendants must join in petition for removal to federal district court. 28 U.S.C.A. § 1446.

**7. Removal of Cases ⟺82**

Named defendants who are merely nominal or formal may be disregarded for purpose of removal petition and need not join in petition. 28 U.S.C.A. § 1446.

**8. Removal of Cases ⟺82**

Failure of garnishee, who was merely a nominal party in breach of contract action in which it was a defendant, to join in petition for removal did not render petition defective. 28 U.S.C.A. § 1446.

Stuart R. Lefstein, Rock Island, Ill., for plaintiff.

Mark S. Zolno, Chicago, Ill., John Konecky, Rock Island, Ill., for defendant.

## ORDER

MIHM, District Judge.

This is a breach of contract action between Plaintiff, an Iowa corporation in the business of selling amusement rides and their accessories, and Defendant, Elektro-Mobiltechnik (EMT), a foreign corporation with its principal place of business in West Germany. The Plaintiff and Defendant EMT entered into two contracts which provided that Plaintiff would purchase Kiddie Rides' products from EMT for resale in the United States. Plaintiff alleges that it performed all conditions of the contract but the Defendant breached the contract in several respects. Plaintiff seeks judgment in the amount of $85,000.

The complaint was originally filed on November 9, 1983 in the Circuit Court of Rock Island County and was removed to Federal Court on December 8, 1983 by the Defendant EMT. The Plaintiff has moved to remand the case to state court based on three arguments:

1. That the Petition for Removal was not timely filed.

2. That the Defendant waived its right to removal by participating in the state court proceedings.

3. That the Petition for Removal is defective because all Defendants did not join in the Petition.

A hearing on the Plaintiff's motion to remand was held on February 2, 1983.

TIMELINESS

For its first argument, the Plaintiff contends that while the petition for removal was filed within 30 days of the time the complaint was filed, the complaint was not the "initial pleading setting forth the claim for relief upon which such action or proceeding is based" 28 U.S.C. § 1446(b). Section 1446(b) provides:

"The petition for removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter."

The Plaintiff claims that the "initial pleading" was not the complaint but the affidavit for attachment filed on October 12, 1983. The affidavit for attachment indicated that Robert H. Versman, as president of Kiddie Rides, Inc. had an $85,000 claim against EMT, a West German corporation, for breach of contract. Further, Mr. Versman stated that EMT would have property consisting of a container with Kiddie Ride items in it valued at approximately $52,665 and that the Defendant, Grand Trunk Western Railroad Company, would have actual physical custody of the container.

Based on this affidavit, an order of attachment was issued on October 12, 1983 directing the sheriff of Cook County to attach the container of Kiddie Rides in the possession of Defendant Grand Trunk. In addition, the Defendants were summoned to appear in the Circuit Court of Rock Island County on November 4, 1983.

On November 4, 1983, the Defendant EMT made a special appearance and filed a "Motion to Vacate Order of Attachment". The chronology of events then proceeds as follows: the Plaintiff filed the complaint herein on November 9, 1983; the State Court denied the "Motion to Vacate Order of Attachment" on November 10, 1983; the Defendant EMT removed the case to Federal Court on December 8, 1983; and the Defendant filed a notice of appeal in state court of the denial of its "Motion to Vacate Order of Attachment" on December 9, 1983.

With this background, the Court must consider whether the affidavit of attachment should be considered the initial pleading in this case or whether the initial plead-

ing was in fact the complaint filed on November 9.

In their discussion of the "time for seeking removal", Wright, Miller and Cooper state.

> "The fundamental principle of the statute is that the time limitation on seeking removal begins to run when defendant receives notice of the action, not when the action is commenced." Wright, Miller, and Cooper, Federal Practice and Procedure: Civil, § 3732.

Thus:

> "By its own terms, then, the statute does not require an action to be filed before a petition for removal will be entertained.
>
> \*      \*      \*      \*      \*      \*
>
> It is the 'receipt' of the 'initial pleading' pursuant to section 1446 which controls removability." *Perimeter Lighting, Inc. v. Karlton,* 456 F.Supp. 355, 358–359 (N.D.Ga.1978).

In the *Karlton* case, the defendant filed a petition for removal after a temporary restraining order had been entered against him even though no complaint had been filed with the clerk of the state court. At the hearing on the temporary restraining order, the plaintiff had delivered to the defendant and the presiding judge a copy of a complaint but one week later filed a complaint which differed from that which he had delivered at the TRO hearing. While the complaint delivered at the TRO hearing presented complete diversity and, therefore, would have permitted removal, the complaint as actually filed included other parties and complete diversity was not present and removal would have been improper. The Court held that an "initial pleading" as used in the statute:

> "... must constitute a clear statement of the case which will allow the defendant to examine the basis for the action. In particular, the initial pleading must be such that the defendant can intelligently ascertain removability from its face." *Karlton,* 456 F.Supp. at 358 (citations omitted).

The Court, under the facts presented, concluded:

> "In effect, then, the state court had taken action on a case not yet of record. To deny defendant's right to remove in such a situation would allow plaintiff to effec~~tively hold back defendant's right to remove~~ until such time as plaintiff sees fit to file the complaint. Such a holding would work to defeat the removal statute's purpose and allow a plaintiff to keep an action, otherwise removable, in the state court even after the state court had exercised its power by enjoining the defendant. Here there has been an initial pleading, received by the defendant at a court proceeding at which the court's power was exercised over defendant. Certainly that is all which section 1446(b) requires to give rise to a right of removal." *Karlton,* 456 F.Supp. at 359.

In *Williams v. Beyer,* 455 F.Supp. 482 (D.C.N.H.1978), a dispute arose between the parties regarding the terms of a contract. The contract provided that any disputes were to be resolved through the use of arbitration and, therefore, the plaintiff filed a petition for appointment of arbitrator in the county court of New Hampshire. The petition set forth the diverse residency of the parties and indicated that the amount in controversy was $15,000. The defendant filed an answer and a cross-petition. The court ordered the parties to proceed to arbitration and the arbitrator eventually entered an award in favor of the plaintiff. Several months later the plaintiff filed an application for confirmation of the award in the county court and the defendant attempted to remove the action and filed a motion to vacate the arbitration award. The court held that the time period with respect to the removability of the action began when the court entered its order directing the parties to proceed to arbitration because "at that point in time, the defendant knew full well that there was a dispute between diverse parties and that the plaintiff was then claiming the sum of $15,000 in damages". *Williams,* 455 F.Supp. at 484.

Accordingly, the time period for seeking removal begins to run when the Defendant receives a pleading from which he can

clearly ascertain that the action is removable.

[1] In our case, the Defendant or his agent had, prior to November 8 (30 days prior to the petition for removal being filed), been served with the affidavit of attachment which provided the Defendant with a "clear statement" that the case involved diverse parties and that the requisite amount in controversy was involved. Consequently, the Defendant or his agent was aware of the facts necessary to determine that the action was removable before November 8, 1983.

Defendant EMT, in opposition to the motion to remand, has asserted that under Illinois law the complaint was the initial pleading in this case and, therefore, removal was timely. However, the Illinois statutes dealing with attachment indicate otherwise.

According to § 4–104, the plaintiff must file a statement, which may be embodied in the affidavit, indicating that the "action invoked" by the affidavit does or does not sound in tort. (Ill.Rev.Stat. ch. 110, ¶ 4–104). If the court is satisfied that the affidavit is proper and a prima facie case established, the order of attachment shall be entered.

Following entry and service of the order: "The defendant may answer, denying the facts stated in the affidavit upon which the order of attachment was entered which answer shall be verified by affidavit; and if, upon the trial thereon, the issue shall be found for the plaintiff, the defendant may answer the complaint or file a motion directed thereto as in other cases...." Ill.Rev.Stat. 110, ¶ 4–131.

Thus the statute specifically indicates that the action is "invoked" by the affidavit and provides that the defendant may answer challenging the facts in the affidavit. In fact, the complaint need not even be filed until ten (10) days before the return day of the order or, at the latest, five (5)

days after the return day (Ill.Rev.Stat. ch. 110, ¶ 4–130).

Consequently, it is the affidavit of attachment [1] which constitutes the initial pleading in this case, and, when it is received by the defendant, the time period for removal commences.

Defendant in further response to the motion to remand claims that EMT itself did not receive notice of the attachment until November 17. However, at oral argument on this motion, Defendant's attorney admitted that he had received the attachment order and affidavit prior to November 8, 1983. While it is true that service on a *statutory* agent is not sufficient to commence the time period, service on an agent *in fact* is. Wright, Miller and Cooper, Federal Practice and Procedure, Jurisdiction: § 3732. Under the facts of this case, EMT cannot rely on its lack of knowledge to control the time at which the period for removal commenced. It is sufficient for the purposes of § 1446 that EMT's attorneys had knowledge of all the facts necessary to determine removability.

Accordingly, the petition for removal was not filed within 30 days of the initial pleading and the case must be remanded. The Court will also address Plaintiff's other arguments in support of remand.

## WAIVER

[2, 3] In certain circumstances, the Defendant will be deemed to have waived his right to removal. To constitute a waiver of the right to removal, there must be a clear and unequivocal waiver on the part of the defendant. *Bedell v. H.R.C. Ltd.*, 522 F.Supp. 732 (E.D.Ky.1981); *Beasley v. Union Pac. R. Co.*, 497 F.Supp. 213 (D.C.Neb. 1980). The defendant must seek some affirmative action or relief in the state court, the mere filing of an answer or general defense short of the merits does not constitute a waiver. See *Bedell*, supra; *Beasley*, supra.

---

1. Presumably, a defendant would receive a copy of the order of attachment at the same time as receiving the affidavit. Thus, not only would he be aware of the facts necessary to determine

removability at that time, but he would also have been subjected to an exercise of the court's power. See *Karlton*, 456 F.Supp. at 359.

[4] However, the Defendant may not, after having argued and lost an issue in state court, remove the action to federal court for what is in effect an appeal of the adverse decision. *O.G. Orr & Co. v. Fireman's Fund Ins. Co.*, 36 F.2d 378 (S.D.N.Y.1929); *In Re 73rd Precinct Station House, Borough of Brooklyn*, 329 F.Supp. 1175 (E.D.N.Y.1971).

All things being equal, the Court would probably deny remand based solely on the waiver grounds. However, the background of this case indicates that Plaintiff may simply be seeking review of the adverse state decision. After the order of attachment was entered, Defendant entered a special appearance and moved to vacate the order of attachment. It was not until that motion had been denied that Defendant sought removal.

[5] The actions taken by the Defendant combined with the untimeliness of the removal, are sufficient to constitute a waiver on the part of the Defendant.

## JOINDER OF ALL DEFENDANTS

[6, 7] Plaintiff's final argument in support of remand is that all of the named Defendants failed to join in the petition for removal. While it is well settled that all of the Defendants must join in a petition for removal, *Gableman v. Peoria*, 179 U.S. 335, 337, 21 S.Ct. 171, 172, 45 L.Ed. 220 (1900), named defendants who are merely nominal or formal may be disregarded and need not join in the petition. *Ryan v. State Board of Elections of the State of Illinois*, 661 F.2d 1130, 1134 (7th Cir.1981); Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction § 3731.

[8] The Court finds that the Defendant Grand Trunk, as garnishee, is merely a nominal party and its absence from the petition for removal does not require remand. *Farmer's Bank v. Hayes, et al.*, 58 F.2d 34 (6th Cir.1932). Grand Trunk has no real interest in this litigation, it merely being the party who happened to have possession of the container at the time the order was issued.

Accordingly, IT IS ORDERED that the Plaintiff's Motion to Remand is GRANTED

and the case is REMANDED back to the Circuit Court of Rock Island County.



---

John E. WHITE, Plaintiff,

v.

DOUGHERTY COUNTY BOARD OF EDUCATION, et al., Defendants.

Civ. A. No. 81–20–ALB.

United States District Court, M.D. Georgia, Albany Division.

Feb. 10, 1984.

After employee of county board of education successfully challenged rule which required any school system employee who became candidate for public office to take leave of absence without pay for duration of candidacy as violative of Voting Rights Act, board abolished such rule and adopted policy which expressly denied employee leaves of absence for political purposes and required employees holding elective office to abide by same leave policies that were applicable to all employees. Employee then brought further action alleging that new policy also violated Act. A three-judge panel of the District Court, Owens, J., held that board's policy which required that its employees holding elective office abide by same leave policies that were applicable to all employees did not create "standard, practice or procedure" with respect to voting violative of Voting Rights Act, as such action constituted nothing more than refusal to adopt legislative leave policy and served in effect as reaffirmation of policy requiring employees to fulfill their contracts.

Judgment for defendants.

R. Lanier Anderson, III, Circuit Judge, dissented and filed opinion.

# ...SVILLE

## Grande Valley

COMMUNITY A4
SOUTHMOST A5
TEXAS A8
NATION A10
EDITORIAL A12

# Autopsy: Man shot 5 times

**Court:** Widow claims husband received 18 gunshot wounds.

BY BRAD PIERCE
THE BROWNSVILLE HERALD

Despite allegations that David Olvera, 37, died in a hail of gunfire from police officers last month, preliminary autopsy results indicate he had only five gunshot wounds at the time of his death.

His widow's lawyer, Angela Nix, began proceedings last week for a multimillion-dollar lawsuit and maintains that the police shot Olvera 18 times as he tried to give himself up.

However, the autopsy findings show that Olvera was shot twice in his chest, once in his stomach, once in his arm, which was a superficial wound.

"He was shot a total of five times," pathologist Lawrence J. Dahm concluded, and died from massive bleeding and liver and spleen, which caused abdominal bleeding.

Justice of the Peace Tony Torres, who viewed Olvera's body before the autopsy, also said there's no way he was shot 18 times.

Nix did not return phone calls on Monday to respond to the autopsy results.

Police killed Olvera, who reportedly was an ex-con with a history of domestic violence, on Oct. 1 after he stabbed his wife, Mary, at their home at 228 Paredes Line. He was

he lunged at the officers with a knife, Brownsville police Lt. Orlando Rodriguez said. Mary, 38, had suffered constant harassing and assaults by her husband ever since he got out of prison nine months before, Rodriguez said. However, she has expressed plans to file a $10 million wrongful death lawsuit against the City of Brownsville and the police department, alleging emotional distress and possible civil rights violations.

Nix said the three responding officers, Pete Dominguez, Juan Salinas and Juan Jose Trevino fired 18 shots at Olvera, who was unarmed and was in the act of ...

One of the couple's three daughters, ages 9, 13 and 16, called 911 to receive medical attention for her mother, whom police say was stabbed by her husband with a kitchen knife.

Nix maintains that the stabbing was accidental and the family never intended for the police to slow up. However, after they did, the youngest daughter begged her father to flee.

"Daddy, Daddy run, they are going to arrest you," the girl said, according to Nix.

An agitated, knife-wielding Olvera was found in the backyard of the home vowing he would not go back to prison, Rodriguez said.



# Lawsuit against police planned

## Crime: Widow seeks damages for death of her husband.

BY DANIEL BORUNDA
THE BROWNSVILLE HERALD

The widow stabbed by her husband, after which he was fatally shot by Brownsville police, has begun proceedings for a multi-million dollar lawsuit against the city and police department, her attorney said.

David Olvera was allegedly unarmed when he was shot 18 times by three police officers on Oct.1 after the alleged accidental stabbing of Mary Olvera, attorney Angela P. Nix said.

"He had both hands up in the air, palms forward and they fired," Nix said. "They completely emptied their guns into the man."

Police had said that a knife-wielding David Olvera had lunged at them and officers responded within training procedures.

Nix filed a temporary restraining order to prevent the erasure of police dispatch recordings and a petition for testimony and evidence, including the three guns used in the shooting.

Olvera's survivors — his 38-year-old wife and three daughters — will file a $10 million lawsuit for wrongful death and the intentional infliction of emotional distress, Nix said. Mary Olvera was not available for comment.

"We welcome any inquiry regarding conduct of officers" said police spokesman Lt. Orlando Rodriguez, who refused to discuss the case further because of the pending litigation. "The matter will be dealt with at the proper time," he said.

City Attorney Geoff Warburton refused to comment since it was the start of litigation.

Nix said that the image police have painted of an enraged Olvera is false. She said the incident was an accident that ended tragically in a hail of police gunfire.

It was a little past 9 a.m. on Oct. 1 when Olvera was using a kitchen knife to make a sandwich at the family home at 228 Paredes Line Road, Nix said. It was nine months since the 37-year-old parolee had served prison time on a drunk driving charge.

The night before, Olvera and his wife of 17 years had argued. Olvera went to the bedroom to continue the argument.

He had the knife in hand, and after repeated pleas she got up as he leaned forward and the knife accidentally went through a pillow and wounded Mary Olvera badly enough that she would need hospitalization, the attorney said.

"It was not an intentional stabbing," Nix said. "She did not know it happened when it happened."

Police had said Olvera had been harassing and threatening his wife.

Police arrived to find Mary Olvera bleeding in the front yard. The family was waiting for the ambulance, Nix said.

Officers Pete Dominguez, Juan Salinas and Juan Jose Treviño drew their weapons. They found a shirtless Olvera in the backyard and gunfire broke out, Nix said.

The attorney contends that Olvera did not lunge at the officers. In fact, Nix said; the knife was in the house.

The case may go before a federal judge since it involves civil rights violations claims, said Nix, who explained the case is similar to the Rodney King police brutally case about 10 years ago in Los Angeles.


EXHIBIT

Beach County.          Dick Cheney charged over   and roads on the federal tut

# Family disputes autopsy report in police shooting

## Findings: Drug use and fired bullets in question.

BY BRAD PIERCE
THE BROWNSVILLE HERALD

In addition to refuting allegations that David Olvera was gunned down by the police with 18 shots, a preliminary autopsy report shows that the ex-con had drugs in his system when he confronted three officers last month.

The pathologist's report, concluded following an examination of his body the day after he was killed, shows that Olvera had cocaine and marijuana in his system at the time of his death.

The police reported that Olvera was agitated after he stabbed his wife in early October and was confronted by officers Pete Dominguez, Juan Salinas and Juan Jose Trevino. The 37-year-old ex-con was unemployed at the time of the incident and had been harassing his wife ever since he was released from prison on a drunken driving charge nine months before, the police say.

However, Angela Nix, attorney for Olvera's widow, rejects the possibility that Olvera was on drugs when he was killed. She said his wife, who's name is Mary, was not aware of him ever being on drugs and if any chemicals were found in his body they were administered by paramedics at the scene in an attempt to revive him.

Treatment for gunshot wounds could result in a false positive for cocaine, she explained, adding that the incident should never have escalated to the point of firing at him, since Olvera was unarmed.

"He did not have a knife in his hands," Nix suggested, despite police assertions that Olvera lunged at the officers with a knife. A knife was later recovered inside the house, Nix added, but Olvera did not have it is his hand at the time the police shot him.

Nix also maintains police should have never responded to the 911 call, made by one of Olvera's daughters, because no crime had been committed since Olvera's wife was injured by accident.

"An ambulance was called, not the police," she said. "They thought it was a domestic violence situation instead of a domestic accident." While the officers may have shot him five times, as the autopsy report indicates, that doesn't mean the officers didn't fire more rounds, Nix said, sticking by her previous statement that the police fired 18 shots.

Nix, however, said based on statements made by Olvera's wife and three children, who were standing behind the officers at the time of the incident, she believes "a considerable amount more" than five shots were fired.

The Brownsville lawyer explained that the family believes the officers "emptied" their weapons when firing on Olvera and several neighbors who witnessed the incident can collaborate their allegations, she said.

Nix filed a temporary restraining order earlier this month to prevent the erasure of police dispatch recordings and a petition for testimony and evidence, including the three guns used in the shooting.

She is preparing to file a $10 million lawsuit on behalf of Olvera's widow, which includes accusations of emotional distress and possible civil rights violations by the policemen. Nix maintains that the police "terrorized" one of Olvera's daughter and threatened to arrest tl. entire family for trying to be at Olvera's side as he lay dying.

"(But) the 13-year-old gets to her dad's side as he is gasping out 'M'ija, I love you,'" Nix said, adding that the officers pulled the girl's hair and threw her to the ground, then handcuffed her and took her in for three hours of questioning.

"This was a terrible, terrible error on the part of officers," Nix said. Police maintain that they acted justly, in accordance to law and with compassion for the victims

"The facts of this case w come out at the proper time, Lt. Orlando Rodriguez of the Brownsville Police Department said, declining to comment further due to pending litigation.

EXHIBIT

# WILLETTE & GUERRA, L.L.P.
## ATTORNEYS AT LAW

CHARLES WILLETTE, JR.
R. D. "BOBBY" GUERRA*
MARK SOSSI
HUGH P. TOUCHY
EILEEN M. LEEDS

ALEX AGUIRRE*
EDUARDO G. GARZA
RYAN HENRY
GEORGE C. KRAEHE
CYNTHIA A. MALDONADO
ILENE PERALEZ*
LAWRENCE J. RABB
ALEXIA J. RODRIGUEZ
ELIZABETH SANDOVAL-CANTU*

INTERNATIONAL PLAZA, SUITE 460
3505 BOCA CHICA BOULEVARD
BROWNSVILLE, TEXAS 78521
TELEPHONE: (956) 541-1846
FACSIMILE: (956) 541-1893

*MCALLEN OFFICE:
801 NOLANA, SUITE 320-A
MCALLEN, TEXAS 78504
TELEPHONE: (956) 686-2266

November 13, 2000

***Via Facsimile (956) 548-0522***
Ms. Angela Nix
ATTORNEY AT LAW
955 East Madison Street
Brownsville, Texas 78520

Re:   Civil Action No. B-00-172
In Re: Petition for Mary Olvera, et al. vs.
City of Brownsville, et al.
For the Southern District of Texas
Brownsville Division
Our File No.  00-216  CW/GK

Dear Ms. Nix:

This is to confirm that we have met by telephone pursuant to Federal Rule of Civil Procedure 26(f) and have discussed "the nature and basis of [our] claims and defenses and the possibilities for a prompt settlement or resolution of the case, to make or arrange for disclosures . . . , and to develop a proposed discovery plan." Fed. R. Civ. Proc. 26(f). This is also to confirm that you have received our proposed discovery plan and will be making changes to it as indicated during our meeting so that we can file it as soon as possible with the Court.

To summarize our discussions, you have indicated that you do not agree to federal jurisdiction in this matter, arguing that our removal was premature. You are further not amenable to consenting to trial of this matter by a United States Magistrate Judge, at least not at this juncture. We also discussed what evidence each of us has in support of our claims and/or defenses. You indicated that you have identified at least three (3) witnesses–two persons who drove by in their vehicles and a person employed by a funeral home–who you say will testify that far more than five (5) shots were fired at the time of the incident in question. We remind you that Federal Rule of Civil Procedrue 26(a) requires you to voluntarily disclose the names, addresses, and telephone numbers of these persons, as well as the names, addresses, and telephone numbers of any persons having personal knowledge of any facts relevant to this matter.



'Ms. Angela Nix
ATTORNEY AT LAW
November 13, 2000
Page 2

We hereby request that you immediately disclose the names, addresses, and telephone numbers of these witnesses.

For our part, we will provide you as soon as possible with a complete copy of all non-privileged parts of the custodial death report generated by the Brownsville Police Department in accordance with Texas Code of Criminal Procedure article 49.18, Texas Penal Code section 39.05, and Texas Government Code section 501.055(b). The custodial death report includes, among other things, offense reports, supplemental reports, victim and witness affidavits, police department communications, emergency medical service records, pathology reports, David Olvera's criminal history record, and diagrams and photographs of the scene of the shooting. There are certain documents and things in the possession or under the control of the Brownsville Police Department not made part of this report, including but not limited to the firearms used in the shooting and other physical evidence collected at the scene of the incident. These materials can be examined at some later date agreeable to the parties.

Finally, as discussed, we would like to inspect the premises at 228 Paredes Line Road as soon as possible. It is essential that we be permitted to inspect, photograph, and videotape these premises before any changes are made to them. We would also like to take the oral deposition of Jaclyn Olvera. We are available on the following dates: November 14, 15, 16, 20, 21, 27, 28, 29, and 30, 2000. We hope to hear from you as soon as possible.

As a final matter, we would note that already we have read two newspaper articles in which statements highly prejudicial to our client are attributed to you. In one account, you allegedly told a reporter that David Olvera was shot eighteen (18) times, and that, "[h]e had both hands up in the air, palms forward and they fired." You allegedly went on to say, "They completely emptied their guns into the man." If you have evidence of this, we would like to see it as soon as possible. We would also like to remind you that Rule 3.07 of the Texas Disciplinary Rules of Professional Conduct specifically prohibit a lawyer from making extrajudicial statements to a newspaper if the lawyer knows or reasonably should know that it will have a substantial likelihood of prejudicing an adjudicatory proceeding. If you have been making statements to the press regarding the facts of this case, we would respectfully request that you refrain from doing so in the future. If you cannot refrain from doing so, we will ask the Court to take the appropriate action.

Your cooperation is greatly appreciated.

Very truly yours,

WILLETTE & GUERRA, L.L.P.

By: _____

George C. Kraehe

```
                    TRANSACTION REPORT
                                              NOV-13-00 MON 05:51 PM

  DATE  START    RECEIVER          TX TIME   PAGES TYPE        NOTE           M#  DP

  NOV-13 05:50 PM 0870#00216*00#548052  1'31"    2  SEND        OK            009


                                       TOTAL :     1M 31S  PAGES:   2
```

# WILLETTE & GUERRA, L.L.P.
## ATTORNEYS AT LAW

CHARLES WILLETTE, JR.
R. D. "BOBBY" GUERRA*
MARK SOSSI
HUGH P. TOUCHY
EILEEN M. LEEDS

ALEX AGUIRRE*
EDUARDO G. GARZA
RYAN HENRY
GEORGE C. KRAEHE
CYNTHIA A. MALDONADO
ILENE PERALEZ*
LAWRENCE J. RABB
ALEXIA J. RODRIGUEZ
ELIZABETH SANDOVAL-CANTU*

INTERNATIONAL PLAZA, SUITE 460
3505 BOCA CHICA BOULEVARD
BROWNSVILLE, TEXAS 78521
TELEPHONE: (956) 541-1846
FACSIMILE: (956) 541-1893

*MCALLEN OFFICE:
801 NOLANA, SUITE 320-A
MCALLEN, TEXAS 78504
TELEPHONE: (956) 686-2266

November 13, 2000

*Via Facsimile (956) 548-0522*
Ms. Angela Nix
ATTORNEY AT LAW
955 East Madison Street
Brownsville, Texas 78520

Re:   Civil Action No. B-00-172
In Re: Petition for Mary Olvera, et al. vs.
City of Brownsville, et al.
For the Southern District of Texas

# WILLETTE & GUERRA, L.L.P.
## ATTORNEYS AT LAW

CHARLES WILLETTE, JR.
R. D. "BOBBY" GUERRA*
MARK SOSSI
HUGH P. TOUCHY
EILEEN M. LEEDS

ALEX AGUIRRE*
EDUARDO G. GARZA
RYAN HENRY
GEORGE C. KRAEHE
CYNTHIA A. MALDONADO
ILENE PERALEZ*
LAWRENCE J. RABB
ALEXIA J. RODRIGUEZ
ELIZABETH SANDOVAL-CANTU*

INTERNATIONAL PLAZA, SUITE 460
3505 BOCA CHICA BOULEVARD
BROWNSVILLE, TEXAS 78521
TELEPHONE: (956) 541-1846
FACSIMILE: (956) 541-1893

*MCALLEN OFFICE:
801 NOLANA, SUITE 320-A
MCALLEN, TEXAS 78504
TELEPHONE: (956) 686-2266

November 15, 2000

*Via Facsimile (956) 548-0522*
Ms. Angela Nix
ATTORNEY AT LAW
955 East Madison Street
Brownsville, Texas 78520

Re:     Civil Action No. B-00-172
        In Re: Petition for Mary Olvera, et al. vs.
        City of Brownsville, et al.
        For the Southern District of Texas
        Brownsville Division
        Our File No.  00-216  CW/GK

Dear Ms. Nix:

As you know, our letter to you of November 13, 2000, explained our concern regarding certain comments you and your client are making to the news media. We pointed out that Rule 3.07 of the Texas Disciplinary Rules of Professional Conduct specifically prohibits a lawyer from making extrajudicial statements to a newspaper if the lawyer knows or reasonably should know that it will have a substantial likelihood of prejudicing an adjudicatory proceeding. We asked you to refrain from making any further such comments. This morning we were surprised to see that a third article in which certain prejudicial comments are attributed to you and your clients, including your belief that positive cocaine and marijuana tests indicated in David Olvera's autospy report were somehow false. We believe these comments, like the others, are improper under Rule 3.07. We would also like to advise you that comments made to the media are not privileged and may subject you and your clients to liability for slander and defamation.

Please accept this as a request that you enter into an agreed motion, asking the Court to enter an order prohibiting the parties from any further improper communications with the news media. A copy of our proposed agreed motion is submitted for your review. If you are in agreement with the proposed agreed motion, please sign below where indicated and return this letter to me by facsimile. If you are not in agreement with this proposed motion, please let us


EXHIBIT F

Mr. Angela Nix
ATTORNEY AT LAW
November 15, 2000
Page 2

know, and we will file it with the Court over your objection.

This is also to let you know that we have yet to hear from you regarding the other matters discussed in our letter to you of November 13, 2000. We would ask you to consult your calendar and provide us with dates as soon as possible when you can be available for the requested inspection and other discovery.

Your cooperation is greatly appreciated.

Very truly yours,

WILLETTE & GUERRA, L.L.P.

By:_____
George C. Kraehe

AGREED TO BY:

_____
Angela Nix
Attorney for Petitioner

# WILLETTE & GUERRA, L.L.P.
## ATTORNEYS AT LAW

CHARLES WILLETTE, JR.
R. D. "BOBBY" GUERRA*
MARK SOSSI
HUGH P. TOUCHY
EILEEN M. LEEDS

ALEX AGUIRRE*
EDUARDO G. GARZA
RYAN HENRY
GEORGE C. KRAEHE
CYNTHIA A. MALDONADO
ILENE PERALEZ*
LAWRENCE J. RABB
ALEXIA J. RODRIGUEZ
ELIZABETH SANDOVAL-CANTU*

INTERNATIONAL PLAZA, SUITE 460
3505 BOCA CHICA BOULEVARD
BROWNSVILLE, TEXAS 78521
TELEPHONE: (956) 541-1846
FACSIMILE: (956) 541-1893

*MCALLEN OFFICE:
801 NOLANA, SUITE 320-A
MCALLEN, TEXAS 78504
TELEPHONE: (956) 686-2266

November 17, 2000

*Via Facsimile (956) 548-0522*
Ms. Angela Nix
ATTORNEY AT LAW
955 East Madison Street
Brownsville, Texas 78520

Re:   Civil Action No. B-00-172
In Re: Petition for Mary Olvera, et al. vs.
City of Brownsville, et al.
For the Southern District of Texas
Brownsville Division
Our File No.  00-216  CW/GK

Dear Ms. Nix:

This is to confirm that you will get with me on Monday, November 20, 2000, to schedule a time to inspect the premises at 228 Paredes Line Road and the other discovery we requested.  In addition, this is to confirm that you will be reviewing our proposed "gag order" this weekend and our proposed Rule 26(f) report and on Monday will communicate any changes you wish to make to either.

I look forward to hearing from you soon.

Very truly yours,

WILLETTE & GUERRA, L.L.P.

By: G. C. Kraehe

George C. Kraehe



EXHIBIT
6

```
************************************************************************
*                         TRANSACTION REPORT                      P. 01
*                                                    NOV-17-00 FRI 05:31 PM
*
*   DATE  START   RECEIVER          TX TIME  PAGES TYPE      NOTE          M#  DP
*
*  NOV-17 05:30 PM 0893#00216*00#548052   42"    1  SEND      OK           100
*
*                                          TOTAL :        42S  PAGES:  1
*
************************************************************************
```

# WILLETTE & GUERRA, L.L.P.
## ATTORNEYS AT LAW

CHARLES WILLETTE, JR.
R. D. "BOBBY" GUERRA*
MARK SOSSI
HUGH P. TOUCHY
EILEEN M. LEEDS

ALEX AGUIRRE*
EDUARDO G. GARZA
RYAN HENRY
GEORGE C. KRAEHE
CYNTHIA A. MALDONADO
ILENE PERALEZ*
LAWRENCE J. RABB
ALEXIA J. RODRIGUEZ
ELIZABETH SANDOVAL-CANTU*

INTERNATIONAL PLAZA, SUITE 460
350S ROCA CHICA BOULEVARD
BROWNSVILLE, TEXAS 78521
TELEPHONE: (956) 541-1846
FACSIMILE: (956) 541-1893

*MCALLEN OFFICE:
801 NOLANA, SUITE 320-A
MCALLEN, TEXAS 78504
TELEPHONE: (956) 686-2266

November 17, 2000

**_Via Facsimile (956) 548-0522_**
Ms. Angela Nix
ATTORNEY AT LAW
955 East Madison Street
Brownsville, Texas 78520

Re: Civil Action No. B-00-172
In Re: Petition for Mary Olvera, et al. vs.
City of Brownsville, et al.
For the Southern District of Texas

# WILLETTE & GUERRA, L.L.P.
## ATTORNEYS AT LAW

CHARLES WILLETTE, JR.
R. D. "BOBBY" GUERRA*
MARK SOSSI
HUGH P TOUCHY
EILEEN M. LEEDS

ALEX AGUIRRE*
EDUARDO G. GARZA
RYAN HENRY
GEORGE C. KRAEHE
CYNTHIA A. MALDONADO
ILENE PERALEZ*
LAWRENCE J. RABB
ALEXIA J. RODRIGUEZ
ELIZABETH SANDOVAL-CANTU*

INTERNATIONAL PLAZA. SUITE 460
3505 BOCA CHICA BOULEVARD
BROWNSVILLE, TEXAS 78521
TELEPHONE: (956) 541-1846
FACSIMILE: (956) 541-1893

*MCALLEN OFFICE:
801 NOLANA, SUITE 320-A
MCALLEN, TEXAS 78504
TELEPHONE: (956) 686-2266

November 21, 2000

*Via Hand Delivery:*
Ms. Angela Nix
ATTORNEY AT LAW
955 East Madison Street
Brownsville, Texas 78520

Re:   Cause No. 2000-10-4412-A
      In Re: Petition for Mary Olvera, et al. vs.
      City of Brownsville, et al.
      For the Southern District of Texas
      Brownsville Division
      Our File No. 00-216 CW/GK

Dear Ms. Nix:

As indicated, we have submitted a complete copy of the custodial death report generated in connection with the above-referenced matter, together with all attachments included therewith. We could not fax you these materials because they are too voluminous. However, you are perfectly welcome to come view the materials, and the photographs mentioned in a prior letter, yourself at your convenience.

In addition, we must inspect the premises at 228 Paredes Line Road as soon as possible. We have written you numerous letters asking for cooperation in scheduling a date and have spoken with you on the telephone. Last Friday you promised to get me a date by Monday, November 20, 2000, and that you would respond to my questions regarding the motion for "gag order" and the other discovery I requested. You have not responded to any of my inquiries other than to say that you have no response and that your investigation is ongoing. I have no choice then but to file the motion for "gag order" without your agreement and to file a motion to compel



Ms. Angela Nix
ATTORNEY AT LAW
November 21, 2000
Page 2

you to let me inspect the premises.  I assume you will be opposed to these motions.  I will also schedule the requested deposition as it fits my schedule.

Very truly yours,

WILLETTE & GUERRA, L.L.P.

By: _G. C. Kraehe_

George C. Kraehe

GCK/lsr
Encl.

# WILLETTE & GUERRA, L.L.P.
## ATTORNEYS AT LAW

CHARLES WILLETTE, JR.
R. D. "BOBBY" GUERRA*
MARK SOSSI
HUGH P. TOUCHY
EILEEN M. LEEDS

———————

ALEX AGUIRRE*
EDUARDO G. GARZA
RYAN HENRY
GEORGE C. KRAEHE
CYNTHIA A. MALDONADO
ILENE PERALEZ*
LAWRENCE J. RABB
ALEXIA J. RODRIGUEZ
ELIZABETH SANDOVAL-CANTU*

INTERNATIONAL PLAZA, SUITE 460
3505 BOCA CHICA BOULEVARD
BROWNSVILLE, TEXAS 78521
TELEPHONE: (956) 541-1846
FACSIMILE: (956) 541-1893

*MCALLEN OFFICE:
801 NOLANA, SUITE 320-A
MCALLEN, TEXAS 78504
TELEPHONE: (956) 686-2266

November 17, 2000

_**Via Facsimile (956) 548-0522**_
Ms. Angela Nix
ATTORNEY AT LAW
955 East Madison Street
Brownsville, Texas 78520

         Re:    Civil Action No. B-00-172
                 In Re: Petition for Mary Olvera, et al. vs.
                 City of Brownsville, et al.
                 For the Southern District of Texas
                 Brownsville Division
                 <u>Our File No.  00-216  CW/GK</u>

Dear Ms. Nix:

      Please accept this as an invitation to examine photographs taken in connection with the incident made the basis of this lawsuit.  The photographs number in the hundreds, which is why we cannot at this time provide you with copies of them.  Please call us to schedule a time to examine the photographs at a mutually convenient time.

      This is also to let you know that we have yet to hear from you regarding the other matters discussed in our letter to you of November 13, 2000.  We would ask you to consult your calendar and provide us with dates as soon as possible when you can be available for the requested discovery.  We are particularly interested in inspecting the premises at 228 Paredes Line Road as soon as possible.

      Your cooperation is greatly appreciated.



Mr. Angela Nix
ATTORNEY AT LAW
November 17, 2000
Page 2

Very truly yours,

WILLETTE & GUERRA, L.L.P.

By: _____

George C. Kraehe

```
^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^
*                                                            P. 01
*                        TRANSACTION REPORT
*                                               NOV-17-00 FRI 05:33 PM
*
*   DATE  START    RECEIVER        TX TIME  PAGES TYPE      NOTE         M#  DP
*
*  NOV-17 05:32 PM 0870#00216*00#548052  1'11"   2  SEND    OK          101
*
*
*                                         TOTAL :   1M 11S  PAGES:   2
*
^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^
```

# WILLETTE & GUERRA, L.L.P.
## ATTORNEYS AT LAW

CHARLES WILLETTE, JR.
R. D. "HOBBY" GUERRA*
MARK SOSSI
HUGH P. TOUCHY
EILEEN M. LEEDS
—————
ALEX AGUIRRE*
EDUARDO G. GARZA
RYAN HENRY
GEORGE C. KRAEHE
CYNTHIA A. MALDONADO
ILENE PERALEZ*
LAWRENCE J. RABB
ALEXIA J. RODRIGUEZ
ELIZABETH SANDOVAL-CANTU*

INTERNATIONAL PLAZA, SUITE 460
3505 BOCA CHICA BOULEVARD
BROWNSVILLE, TEXAS 78521
TELEPHONE: (956) 541-1846
FACSIMILE: (956) 541-1893

*MCALLEN OFFICE:
801 NOLANA, SUITE 320-A
MCALLEN, TEXAS 78504
TELEPHONE: (956) 686-2266

November 17, 2000

**_Via Facsimile (956) 548-0522_**
Ms. Angela Nix
ATTORNEY AT LAW
955 East Madison Street
Brownsville, Texas 78520

Re:  Civil Action No. B-00-172
In Re: Petition for Mary Olvera, et al. vs.
City of Brownsville, et al.
For the Southern District of Texas

# WILLETTE & GUERRA, L.L.P.
## ATTORNEYS AT LAW

CHARLES WILLETTE, JR.
R. D "BOBBY" GUERRA*
MARK SOSSI
HUGH P. TOUCHY
EILEEN M. LEEDS

———

ALEX AGUIRRE*
EDUARDO G. GARZA
RYAN HENRY
GEORGE C. KRAEHE
CYNTHIA A. MALDONADO
ILENE PERALEZ*
LAWRENCE J. RABB
ALEXIA J. RODRIGUEZ
ELIZABETH SANDOVAL-CANTU*

INTERNATIONAL PLAZA, SUITE 460
3505 BOCA CHICA BOULEVARD
BROWNSVILLE, TEXAS 78521
TELEPHONE: (956) 541-1846
FACSIMILE: (956) 541-1893

*MCALLEN OFFICE.
801 NOLANA, SUITE 320-A
MCALLEN, TEXAS 78504
TELEPHONE: (956) 686-2266

November 28, 2000

*Via Telefax (956) 548-0522*
Ms. Angela Nix
ATTORNEY AT LAW
955 East Madison Street
Brownsville, Texas 78520

Re:    Civil Action No. B-00-172
In Re: Petition for Mary Olvera, et al. vs.
City of Brownsville, et al.
For the Southern District of Texas
Brownsville Division
Our File No. 00-216 CW/GK

Dear Ms. Nix:

I spoke yesterday with Joe Hernandez, who you say will be assisting you in this matter. As Mr. Hernandez has not entered an appearance in this matter as attorney-in-charge and has not indicated an intent to do so, I am a little confused as to whom I should be dealing with. I hope you will designate an attorney-in-charge as soon as possible so that we can avoid confusion in the future. Pending such action, I will assume that you are attorney-in-charge.

As you know, I have already made numerous requests to you, seeking the following:

(1)    an opportunity to inspect, photograph, and videotape the premises at 228 Paredes Line Road;

(2)    the names, addresses, and telephone numbers of the fact witnesses you previously mentioned and the names, addresses, and telephone numbers of any persons with relevant knowledge; and



Ms. Angela Nix
ATTORNEY AT LAW
November 28, 2000
Page 2

     (3)     an opportunity to depose your client, Jaclyn Olvera.

I explained all this to Mr. Hernandez and told him that we have already submitted to you our initial disclosures under Rule 26(a) and have provided you, at our own expense, with copies of the custodial death report and its attachments. We have also invited you to view numerous photographs we have in our possession. We also invite you to listen to certain audiotapes we have that may be relevant to the incident in question.

     Mr. Hernandez told me that, schedule permitting, my clients and I would be allowed to inspect, photograph, and videotape the premises at 228 Paredes Line Road, inside and outside the house, sometime this week. I understand that you have a right to be there during the inspection. We also agreed that we would make available to you all photographs and videotapes generated in connection with the inspection. I have no objection to the terms of the inspection, provided that I be allowed to speak confidentially with my clients during the inspection. I am available any time this week to conduct the inspection. Please let me know in writing when you can allow us to inspect the premises.

     I also asked Mr. Hernandez what facts he believed would support a claim under 42 U.S.C. § 1983 and, in particular, whether he had any witnesses who could support any such claims. Mr. Hernandez told me that he had personally met with and spoken with two witnesses, both of them eyewitnesses. One witness was allegedly painting a house next to 228 Paredes Line Road and saw the entire incident. The second witness was a neighbor of the Olvera family and also allegedly saw the entire incident. Both witnesses allegedly told Mr. Hernandez that David Olvera had his hands in the air and did not have a knife at the time of the shooting. Mr. Hernandez told me that he did not know the names, telephone numbers, or addresses of these witnesses, but that you had this information and would provide it to us as soon as we requested it. We hereby request that you provide us with the names, addresses, and telephone numbers of these two witnesses. We also renew our request for the other witnesses you mentioned earlier, including the witnesses who allegedly drove by and heard eighteen (18) gunshots and the funeral home witness who found many more gunshot wounds in David Olvera than were indicated in the police and autopsy reports. Please provide us with whatever information you have about these witnesses as soon as you have it.

     Mr. Hernandez and I also discussed setting the oral deposition of Jaclyn Olvera. Mr. Hernandez stated that he would object to producing Ms. Olvera for her oral deposition before you have had an opportunity to depose Officers Pete Dominguez, Juan Salinas, and Juan Jose Treviño. We have no objection to producing these officers first in any order you wish, provided:

     (1)     they can be deposed within the next two weeks;
     (2)     provided that you produce all of your clients for oral deposition within the following two weeks in any order we wish; and

Ms. Angela Nix
ATTORNEY AT LAW
November 28, 2000
Page 3

      (3)     provided that you provide us with the names, addresses, telephone numbers, or other relevant information you have regarding the eyewitnesses discussed above before the first deposition.

If this arrangement is agreeable to you, please let me know, and we can begin exchanging dates. If I do not hear from you soon regarding this, however, I will have no choice but to start setting your clients' depositions.

Finally, Mr. Hernandez and I discussed whether you would be seeking remand of this matter to state court. Mr. Hernandez seemed to think that our removal was premature, because you had not yet filed an original petition. We believe, however, our removal was not premature, as you had clearly invoked 42 U.S.C. § 1983, clearly stating that you believed you had a claim under that statute. Moreover, a case can be removed before an original petition is filed; where state law permits pleadings prior to filing the petition, for example, an application for restraining order, the time for removal runs from receipt of such pleadings. *See Kiddie Rides USA, Inc. v. Elecktro-Mobiletechnik*, 579 F. Supp. 1476, 1479 (C.D. Ill. 1984). We do not believe you will be able to prove a claim under 42 U.S.C. § 1983, and we believe the facts of this case will soon make this evident to you. If, after examining the facts, you wish to forego a claim under 42 U.S.C. § 1983 or any other federal claim and stipulate in a writing to the Court that you will not bring any such claims, then we will gladly agree to remand this matter to state court. Otherwise we must insist that this matter be continued in federal court. Please let us know what you intend to do.

Very truly yours,

WILLETTE & GUERRA, L.L.P.

By: George C. Kraehe

GCK/lsr

cc:
*Via Telefax (210) 731-6499*
Mr. Joe Hernandez
Ball & Weed
745 E. Mulberry, Suite 500
San Antonio, Texas 78212

```
^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^
                                                                        P. 01
*                    TRANSACTION REPORT
*                                                    NOV-28-00 TUE 11:35 AM
*
*-----------------------------------------------------------------------------
*  DATE  START    RECEIVER         TX TIME   PAGES TYPE      NOTE         M#  DP
*-----------------------------------------------------------------------------
*  NOV-28 11:33 AM 0870#00216*00#121073  1'25"  3  SEND      OK           203
*
*                                      TOTAL :    1M 25S  PAGES:    3
*
*****************************************************************************
```

# WILLETTE & GUERRA, L.L.P.
## ATTORNEYS AT LAW

CHARLES WILLETTE, JR.
R. D. "BOBBY" GUERRA*
MARK SOSSI
HUGH P. TOUCHY
EILEEN M. LEEDS
~~ ~~
ALEX AGUIRRE*
EDUARDO G. GARZA
RYAN HENRY
GEORGE C. KRAEHE
CYNTHIA A. MALDONADO
ILENE PERALEZ*
LAWRENCE J. RABB
ALEXIA J. RODRIGUEZ
ELIZABETH SANDOVAL-CANTU*

INTERNATIONAL PLAZA, SUITE 460
3505 BOCA CHICA BOULEVARD
BROWNSVILLE, TEXAS 78521
TELEPHONE: (956) 541-1846
FACSIMILE: (956) 541-1893

*MCALLEN OFFICE:
801 NOLANA, SUITE 320-A
MCALLEN, TEXAS 78504
TELEPHONE: (956) 686-226

November 28, 2000

***Via Telefax (956) 548-0522***
Ms. Angela Nix
ATTORNEY AT LAW
955 East Madison Street
Brownsville, Texas 78520

Re:    Civil Action No. B-00-172

```
********************************************************************************
*                                                                    P. 01
*                            TRANSACTION REPORT
*                                                            NOV-28-00 TUE 11:31 AM
*
*   DATE  START    RECEIVER        TX TIME   PAGES TYPE        NOTE        M#  DP
*
*   NOV-28 11:29 AM 0870#00216*00#548052   1'59"    3  SEND        OK          202
*
*
*                                          TOTAL :    1M 59S  PAGES:   3
*
********************************************************************************
```

# WILLETTE & GUERRA, L.L.P.
## ATTORNEYS AT LAW

CHARLES WILLETTE, JR.
R. D. "BOBBY" GUERRA*
MARK SOSSI
HUGH P. TOUCHY
EILEEN M. LEEDS

ALEX AGUIRRE*
EDUARDO G. GARZA
RYAN HENRY
GEORGE C. KRAEHE
CYNTHIA A. MALDONADO
ILENE PERALEZ*
LAWRENCE J. RABB
ALEXIA J. RODRIGUEZ
ELIZABETH SANDOVAL-CANTU*

INTERNATIONAL PLAZA, SUITE 460
3505 BOCA CHICA BOULEVARD
BROWNSVILLE, TEXAS 78521
TELEPHONE: (956) 541-1846
FACSIMILE: (956) 541-1893

*MCALLEN OFFICE:
801 NOLANA, SUITE 320-A
MCALLEN, TEXAS 78504
TELEPHONE: (956) 686-2266

November 28, 2000

*Via Telefax (956) 548-0522*
Ms. Angela Nix
ATTORNEY AT LAW
955 East Madison Street
Brownsville, Texas 78520

Re:    Civil Action No. B-00-172

# LAW OFFICES
## OF
## ANGELA P. NIX, P.C.

§

955 E. Madison
Brownsville, Texas 78520

Tel. (956) 548-0521                                   Fax. (956) 548-0522

November 28, 2000

Mr. George Kraehe,
Willette & Guerra LLP                         SENT VIA FACSIMILE
3505 Boca Chica Blvd.                          (956) 541-1893
Ste. 460
Brownsville, Texas 78521

In re:   Civil Action No. B-00-172; Olvera, et al, vs. City of Brownsville, et al.
         Your file 00-216CW/GK

Dear Mr. Kraehe:

    To address your correspondence of 11-28-00 first.

1. Mr. Joe Hernandez, of the San Antonio based firm of Ball & Weed will be assisting me in the matter of the Olvera Petition to Perpetuate. At such time as a lawsuit is filed in this matter we will designate an official "lead counsel". At this time I am in charge and Mr. Hernandez is a designated co-counsel, who I would your appreciate copying on all correspondence and filings. Additionally, as I mentioned, due to inexperience in this field I will at times defer to Mr. Hernandez. For example your refusal to discuss insurance as an "ethical consideration" when Mr. Hernandez informs me such information should have been forthcoming under the rules of civil procedure in the initial disclosure.

2. Additionally, Mr. Hernandez informs me that although he conceded we would not videotape your inspection to preserve work-product, he never agreed to an unsupervised inspection of the premises and did in fact state that any inspection where individual representatives would be in the house for any period of time would be supervised by he, myself or designated representatives. I note that your letter of 11-28 does not address the concerns I voiced about unsupervised access as you stated it would. Therefore, I will permit no inspection of the premises. The premises will be preserved.



3. As mentioned on the telephone, we are in possession of the name of two witnesses one who does not have a telephone and one who we have no additional information un. Other witnesses mentioned in passing have not been confirmed as yet and have no names . We will forward/disclose that information as well as other pertinent witness information as soon as it becomes available to us.

4. We will not permit the deposition of Jaclyn at this time. I am amazed that given the extent of the correspondence and telephone communications between yourself and Mr. Hernandez and my initial request to depose the officers, and his statement that he will provide our clients for depositions after the police officers have been deposed, you would still send out a deposition notice without discussing availability. I am in Court on 4 cases that day and am not available had you inquired. At such time as the children's depositions are amenably scheduled I would hope that we can obviate their missing a great deal of school ( which would be the case by scheduling them in the morning).

This matter is before the Court on a Petition to Perpetuate and Investigate filed by Plaintiffs. Although your demeanor thus far is more what would have been expected had you filed the Petition to Perpetuate, this remains Plaintiffs' filing and Plaintiff will proceed in an orderly and unhurried investigation of possible claims. To do otherwise only increases the possibility of mistake.

The next two weeks is not amenable to Plaintiffs to begin the depositions.

Also, please be advised that Richard Burst, Attorney for the County of Cameron has advised me this date of a conversation wherein you expressed that your clients had been served with the County paperwork? In the event that this is the case do you know where that paperwork is now ? It has not been forwarded or returned to this office.

Sincerely,

An Nix

Xc: Joe Hernandez

# WILLETTE & GUERRA, L.L.P.
## ATTORNEYS AT LAW

CHARLES WILLETTE, JR.
R. D. "BOBBY" GUERRA*
MARK SOSSI
HUGH P TOUCHY
EILEEN M. LEEDS

ALEX AGUIRRE*
EDUARDO G. GARZA
RYAN HENRY
GEORGE C. KRAEHE
CYNTHIA A. MALDONADO
ILENE PERALEZ*
LAWRENCE J. RABB
ALEXIA J. RODRIGUEZ
ELIZABETH SANDOVAL-CANTU*

INTERNATIONAL PLAZA, SUITE 460
3505 BOCA CHICA BOULEVARD
BROWNSVILLE, TEXAS 78521
TELEPHONE: (956) 541-1846
FACSIMILE: (956) 541-1893

*MCALLEN OFFICE:
801 NOLANA, SUITE 320-A
MCALLEN, TEXAS 78504
TELEPHONE: (956) 686-2266

November 29, 2000

*Via Telefax (956) 548-0522*
Ms. Angela Nix
ATTORNEY AT LAW
955 East Madison Street
Brownsville, Texas 78520

Re:  Civil Action No. B-00-172
     In Re: Petition for Mary Olvera, et al. vs.
     City of Brownsville, et al.
     For the Southern District of Texas
     Brownsville Division
     Our File No.  00-216  CW/GK

Dear Ms. Nix:

Please accept this letter as response to your letter of November 28, 2000.

Your letter states that we refused to discuss insurance as an "ethical consideration." This statement mischaracterizes our conversation with Joe Hernandez. To clarify, Mr. Hernandez asked us whether there was any coverage for the 42 U.S.C. § 1983 claims you intend to bring. I told him that I did not know and that it would be unethical for me to provide him with an opinion regarding coverage. I will, however, make available to you all insurance information required to be disclosed under the Federal Rules of Civil Procedure and the Local Rules once it is in my possession.

Your letter also mischaracterizes my understanding regarding inspection of the premises at 228 Paredes Line Road. You state that I did not address the concerns you voiced about unsupervised access of the premises. In fact, my letter does address these concerns, stating as follows:



Ms. Angela Nix
ATTORNEY AT LAW
November 29, 2000
Page 2

> Mr. Hernandez told me that, schedule permitting, my clients and I would be allowed to inspect, photograph, and videotape the premises at 228 Paredes Line Road, inside and outside the house, sometime this week. *I understand that you have a right to be there during the inspection.* We also agreed that we would make available to you all photographs and videotapes generated in connection with the inspection. *I have no objection to the terms of the inspection, provided that I be allowed to speak confidentially with my clients during the inspection.* I am available any time this week to conduct the inspection.

(Emphasis added.) We of course will do nothing to destroy evidence on the premises, or plant drugs, as you strangely suggested we might. I hope these promises sufficiently address your concerns, and I again ask that you allow me to inspect the premises this week, as previously agreed. If I do not hear from you on this by 2:00 p.m. November 29, 2000, I will seek immediate relief from the Court.

You state in your letter that you "are in possession of the name of two witnesses," but you do not give us the names of these witnesses. We have repeatedly asked you to disclose the names of these witnesses, and you have repeatedly refused to provide us with their names. If you do not provide us with the names of these witnesses by 2:00 p.m. November 29, 2000, we will seek relief from the Court.

You state that you will not allow us to take the oral deposition of Jaclyn Olvera at this time. You further state that you wish first to take the oral depositions of the police officers. As stated earlier, we are willing to produce the police officers for deposition first, provided they are deposed during the next two weeks. We are a little confused in that you your motion to perpetuate argued that the police officers' depositions had to be taken immediately, but weeks have passed and you have done nothing to schedule these depositions. We have done nothing at all to prevent you from taking these depositions and have in fact agreed to produce the officers during the next two weeks for deposition, and still you have done nothing to schedule their depositions. If the officers' depositions need to be taken so urgently, why have you done nothing to schedule them? We, on the other hand, also have a need to conduct discovery, and we cannot delay doing so while we wait for you. If you cannot agree to our proposal or some other reasonable schedule, then we must continue with our discovery by taking the oral deposition of Jaclyn Olvera. If you are not available on the date already noticed, please provide us with dates when you are available. We would also like to put you on notice of our wish to take the oral depositions of your other clients and request dates when they can be made available. I am available on any day between now and December 18, 2000. I am willing to make reasonable arrangements to schedule the depositions in a manner that will accommodate your clients' schedules.

Finally, you state that we have certain "County paperwork." We are not sure what you mean by this, but provide herewith copies of documents with think may be responsive.

CMsPDF - www.lexisa.com

Ms. Angela Nix
ATTORNEY AT LAW
November 29, 2000
Page 3

                                    Very truly yours,

                                    WILLETTE & GUERRA, L.L.P.

                                    By: _____
                                        George C. Kraehe

GCK/lsr

cc:
        *Via Telefax (210) 731-6499*
        Mr. Joe Hernandez
        Ball & Weed
        745 E. Mulberry, Suite 500
        San Antonio, Texas 78212

Case 1:00-cv-00172   Document 11   Filed in TXSD on 12/08/2000   Page 42 of 46

Precept to Serve                        Lit. Seq. # 5.00 .01

No. 2000-10-004412-A

T H E   S T A T E   O F   T E X A S            COPY

IN RE: MARY OLVERA INDIV., ET AL                In The District Court

VS.                                             107th Judicial District

CITY OF BROWNSVILLE, ET AL                      Cameron County, Texas

TO THE SHERIFF OR ANY CONSTABLE OF ANY COUNTY OF THE STATE OF TEXAS OR ANY
OFFICER OR PERSON AUTHORIZED TO SERVE CITATIONS), GREETING:

YOU ARE HEREBY COMMANDED that you serve
CITY OF BROWNSVILLE
C/O MR LANNY LAMBERT
CITY MANAGER
12TH & MARKET SQUARE
BROWNSVILLE TEXAS 78520

RECEIVED
OCT 31 2000
CITY OF BROWNSVILLE
CITY ATTORNEY'S OFFICE

the ____DEFENDANT____ in the above numbered and entitled cause with the
accompanying certified copy of

TEMPORARY RESTRAINING ORDER AND ORDER SETTING HEARING FOR TEMPORARY ORDERS
AND COPY OF PETITION TO PERPETUATE TESTIMONY AND EVIDENCE

HEREIN FAIL NOT, but of this Writ make due return showing how you have
executed the same.

ISSUED AND GIVEN UNDER MY HAND and seal of said Court, this the 27th day of
OCTOBER, A.D. 2000.

ATTEST:   AURORA DE LA GARZA    , Clerk, District Courts
Cameron County, Texas

By: Leticia Rodriguez      , Deputy

ATTORNEY:
HON. ANGELA P. NIX
955 EAST MADISON ST
BROWNSVILLE TX 78520

R E T U R N   O F   O F F I C E R

Came to hand the 27 day of Oct. , 2000 , at 5:00 o'clock P.M., and
executed (not executed) on the 31 day of Oct , 2000 , by delivering to
Mr. Lanny Lambert             in person a true copy of this Citation,
upon which I endorsed the date of delivery, together with the accompanying copy
of the T.R.O. & Order setting hearing for temp orders etc.           .

Cause of failure to execute this citation is: _____ .

C. P.

FEES serving 1 copy
Total....... $_____        Sheriff/constable Cameron . County, TEXAS
Fees paid by: _____        By  R. Gonzalez        ____ Deputy

Case 1:00-cv-00172   Document 11   Filed in TXSD on 12/08/2000   Page 43 of 46

Citation for Personal Service  - GENERAL _____    Lit. Seq. # : 004.01

No. 2000-10-004412-A

T H E   S T A T E   O F   T E X A S

NOTICE TO DEFENDANT:  You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

TO: CAMERON COUNTY SHERIFF'S DEPARTMENT ____
    C/O OMAR LUCIO, SHERIFF ____
    954 EAST HARRISON ____
    BROWNSVILLE  TEXAS 78520 ____

the _____ DEFENDANT _____ , GREETING:

You are commanded to appear by filing a written answer to the

PETITION TO PERPETUATE TESTIMONY AND EVIDENCE, APPLICATION FOR EX PARTE TEMPORARY RESTRAINING ORDER AND REQUEST FOR TEMPORARY ORDERS/ORDER SETTING HRG

at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service of this citation before the Honorable District Court 107th Judicial District of Cameron County, Texas at the Courthouse of said county in Brownsville, Texas.  Said _____ PETITION _____ was filed on OCTOBER 27, 2000 .  A copy of same accompanies this citation.

The file number of said suit being No. 2000-10-004412-A.

The style of the case is:

_____ IN RE: MARY OLVERA INDIV., ET AL _____
                        VS.
_____ CITY OF BROWNSVILLE, ET AL _____

Said petition was filed in said court by _____ HON. ANGELA P. NI _____
(Attorney for _____ PLAINTIFF _____ ), whose address is
955 EAST MADISON ST BROWNSVILLE  TX  78520 _____

The nature of the demand is fully shown by a true and correct copy of the Petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Brownsville, Texas, this the 27th day of OCTOBER , A.D. 2000.

AURORA DE LA GARZA _____ , DISTRICT CLERK
Cameron County, Texas
974 E. Harrison St.
Brownsville, Texas 78521

By: _Leticia Rodriguez_  Deputy

Case 1:00-cv-00172   Document 11   Filed in TXSD on 12/08/2000   Page 44 of 46

# RETURN OF OFFICER

Came to hand the __27__ day of __Oct.__ , __2000__ , at __5:00__ o'clock __?__.M., and
executed (not executed) on the __31__ day of ~~Sep~~ Oct. , 2000 , by d livering to
_____ Mr. Lenny Lambert _____ in person a true copy of t is Citation,
upon which I endorsed the date of delivery, together with the accom anying copy
of the __Petition to Perpetuate testimony & Evidence Application for Ex Parte etc.__

Cause of failure to execute this citation is: _____ _____.
_____

FEES serving 1 copy          __C.P.__
                             Sheriff/constable __Cameron__ Coun y, TEXAS
Total....... $_____        By __R. Garza__ ____ Deputy
Fees paid by:_____

```
                          TRANSACTION REPORT

                                                        NOV-29-00 WED 12:25 PM

  DATE  START    RECEIVER            TX TIME   PAGES TYPE       NOTE          M#  DP

  NOV-29 12:23 PM 0870#00216×00#121073   1'40"    6  SEND        OK           226


                                           TOTAL :   1M 40S PAGES:   6
```

# WILLETTE & GUERRA, L.L.P.
## ATTORNEYS AT LAW

CHARLES WILLETTE, JR.
R. D. "BOBBY" GUERRA*
MARK SOSSI
HUGH P. TOUCHY
EILEEN M. LEEDS

ALEX AGUIRRE*
EDUARDO G. GARZA
RYAN HENRY
GEORGE C. KRAEHE
CYNTHIA A. MALDONADO
ILENE PERALEZ*
LAWRENCE J. RABB
ALEXIA J. RODRIGUEZ
ELIZABETH SANDOVAL-CANTU*

INTERNATIONAL PLAZA, SUITE 460
3505 BOCA CHICA BOULEVARD
BROWNSVILLE, TEXAS 78521
TELEPHONE: (956) 541-1846
FACSIMILE: (956) 541-1893

*MCALLEN OFFICE:
801 NOLANA, SUITE 320 .
MCALLEN, TEXAS 78??
TELEPHONE: (956) 686-???

November 29, 2000

__*Via Telefax (956) 548-0522*__
Ms. Angela Nix
ATTORNEY AT LAW
955 East Madison Street
Brownsville, Texas 78520

Re:   Civil Action No. B-00-172
      In Re: Petition for Mary Olvera, et al. vs.

Downloaded from www.texis.com

| | | | | | | | P. 01 |
|---|---|---|---|---|---|---|---|
| | | TRANSACTION REPORT | | | | NOV-29-00 WED 12:22 PM | |
| DATE | START | RECEIVER | TX TIME | PAGES | TYPE | NOTE | M# DP |
| NOV-29 | 12:18 PM | 0870#00216*00#548052 | 3' 36" | 6 | SEND | OK | 225 |

TOTAL : 3M 36S  PAGES: 6

```
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
```

# WILLETTE & GUERRA, L.L.P.
## ATTORNEYS AT LAW

CHARLES WILLETTE, JR.
R. D. "BOBBY" GUERRA*
MARK SOSSI
HUGH P. TOUCHY
EILEEN M. LEEDS
---
ALEX AGUIRRE*
EDUARDO G. GARZA
RYAN HENRY
GEORGE C. KRAEHE
CYNTHIA A. MALDONADO
ILENE PERALEZ*
LAWRENCE J. RABB
ALEXIA J. RODRIGUEZ
ELIZABETH SANDOVAL-CANTU*

INTERNATIONAL PLAZA, SUITE 460
3505 BOCA CHICA BOULEVARD
BROWNSVILLE, TEXAS 78521
TELEPHONE: (956) 541-1846
FACSIMILE: (956) 541-1893

*MCALLEN OFFICE:
801 NOLANA, SUITE 320-A
MCALLEN, TEXAS 78504
TELEPHONE: (956) 686-226

November 29, 2000

**Via Telefax (956) 548-0522**
Ms. Angela Nix
ATTORNEY AT LAW
955 East Madison Street
Brownsville, Texas 78520

Re:   Civil Action No. B-00-172
      In Re: Petition for Marv Olvera. et al. vs.

CSMPDF - www.texis.com